**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| **ALLIANCE OF ARTISTS AND RECORDING COMPANIES, INC.,** | ) ) ) |  |
| **Plaintiff,** | ) ) ) |  |
| **v.** | ) ) | **Case No. 14-cv-1271 (KBJ)** |
| **GENERAL MOTORS LLC,** | ) ) | ORAL ARGUMENT REQUESTED |
| **DENSO INTERNATIONAL AMERICA, INC.,** | ) ) |  |
| **FORD MOTOR COMPANY, and** | ) ) |  |
| **CLARION CORPORATION OF AMERICA,** | ) ) |  |
| **Defendants.** | ) ) |  |

_____)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FORD MOTOR COMPANY AND CLARION CORPORATION OF AMERICA'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

Van H. Beckwith (admitted *pro hac vice*)
Paul J. Reilly (admitted *pro hac vice*)
Baker Botts L.L.P.
2001 Ross Avenue
Dallas, TX 75201-2980
Telephone: (214) 953-6505
Facsimile:  (214) 661-4505
E-mail:  Van.Beckwith@bakerbotts.com
E-mail:  Paul.Reilly@bakerbotts.com

Joshua H. Packman (D.C. Bar No. 1015463)
Baker Botts L.L.P.
1299 Pennsylvania Avenue, NW
Washington, DC 20004-2400
Telephone: (202) 639-7726
Facsimile:  (202) 585-1053
E-mail:  Joshua.Packman@bakerbotts.com

**TABLE OF CONTENTS**

<u>Page</u>

<u>PRELIMINARY STATEMENT</u> ................................................................................ 1

<u>STATEMENT OF FACTS</u> ..................................................................................... 3

<u>ARGUMENT</u> ........................................................................................................ 4

I.       APPLICABLE LEGAL STANDARD ............................................................4

II.     NAV SYSTEMS ARE NOT DIGITAL AUDIO RECORDING DEVICES
UNDER THE CONSTRUCTION & DEFINITIONAL FRAMEWORK OF
THE AHRA ........................................................................................................5

        A.      The Definitional Construct of a Digital Audio Recording Device ........................6

        B.      The Nav System is Not Capable of Making a Digital Musical Recording..............7

        C.      A Hard Drive is Incapable of Creating Digital Audio Copied Recordings
as Defined by the Audio Home Recording Act. ......................................................9

        D.      The Audio Home Recording Act's Legislative History Evinces Congress's
Clear Intent to Exclude Hard Drives and Computers from the Act's Reach.........10

III.    THE CLEAR PURPOSE OF THE AUDIO HOME RECORDING ACT WAS
TO PREVENT SERIAL COPYING, BUT AARC HAS FAILED TO PLEAD
THAT THE CLARION NAV SYSTEM CREATES SERIAL COPIES .........................11

<u>CONCLUSION</u>.................................................................................................... 13

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Recording Industry Ass'n of America v. Diamond Multimedia Systems Inc.*, 180 F.3d 1072 (9th Cir. 1999) ............................................................................................................... passim

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) ........................................... 10

*Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927 (Fed. Cir. 2014) ...................................... 4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................... 4, 5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................... 4

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d. Cir. 1991) ......................................... 3

*Erickson v. Pardus*, 551 U.S. 89 (2007) ...................................................................................... 5

*Page v. Mancuso*, 999 F. Supp. 2d 269 (D.D.C. 2013) ................................................................ 3

*Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) .............................. 2

*W. Wood Preservers Inst. v. McHugh*, 292 F.R.D. 145 (D.D.C. 2013) ......................................... 3

*Ward v. D.C. Dep't of Youth Rehabilitation Servs.*, 768 F. Supp. 2d 117 (D.D.C. 2011) ............. 3

**Statutes**

*17 U.S.C. § 1001(1) ................................................................................................................ 6, 7, 9

*17 U.S.C. § 1001(3) .............................................................................................................. 6, 7, 10

*17 U.S.C. § 1001(5) .................................................................................................................. 6, 9

17 U.S.C. § 1002 ......................................................................................................................... 12

17 U.S.C. §§ 1001 et seq............................................................................................................... 1

17 U.S.C. §§ 1001–1003 ............................................................................................................... 5

**Other Authorities**

*H.R. Rep. No. 102-873, pt. 1 (1992) .......................................................................................... 12

*S. Rep. No. 102-294 (1992) ..................................................................................... 8, 10, 11, 12

Webster's New International Dictionary, Unabridged (3d ed. 2014) ............................................ 2

**Rules**

Fed. R. Civ. P. 12(b)(6)................................................................................................................. 1

**Treatises**

Charles Alan Wright et al., Federal Practice and Procedure: Civil 3d § 1366 .............................. 3

## PRELIMINARY STATEMENT

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Ford Motor Company and Clarion Corporation of America move to dismiss Plaintiff Alliance of Artists and Recording Companies, Inc.'s class action lawsuit with prejudice for failure to state any claim upon which any relief can be granted under the Audio Home Recording Act of 1992, 17 U.S.C. §§ 1001 et seq. ("AHRA"). A plain reading of the statute's language and applicable case law confirms that the AARC's claims targeted at Ford's cars and trucks that include navigation systems fail and that Defendants Ford and Clarion have not violated the AHRA.  Indeed, Plaintiff admits that Defendants' complained of "device" stores music on a hard drive—a hard drive that houses software programs and other data.  As such, the device falls outside the AHRA's statutory reach, requiring dismissal of Plaintiff's claims.

Congress enacted the AHRA in 1992 to regulate a then emerging technology that for the first time enabled high quality serial copying of copyrighted musical recordings.  "Serial copying" refers to the creation of copies of a musical recording from another copy of that recording as opposed to the creation of copies from the original recording.  This activity concerned the music industry, which was a proponent of the AHRA.  However, rather than directly prohibit serial copying outright, Congress exempted certain products and devices—specifically including computers and hard drives—from compliance while requiring other specifically defined "devices" to also incorporate technology to prevent serial copying.  The automotive navigation systems here are exempted.

Neither Ford nor Clarion is in the business of facilitating the serial copying of music. Ford is one of the largest automobile manufacturers in the world; it builds and sells some of the best-selling cars and trucks, certain models of which include navigation systems.  Clarion manufactures and supplies Ford with navigation systems for its vehicles.  Each such navigation

system is a complex computer and includes a central processing unit that interprets and executes complex instructions and a 40 GB hard drive[1] for storage of an operating system, computer software programs, databases, and other information ("Nav System").

The Nav Systems are programmable machines that perform high speed processing of various types of data—they are computers.  In response to user input (e.g., a spoken command, manual selection on the display screen, etc.), the Nav System can automatically read instructions from memory and calculate a navigational route, store user preferences to the hard drive, play DVDs, etc.  Among its various features, the Nav System has recording functionality that it uses to update its software, operating system, and maps.  The Nav System also uses its recording functionality to record and store photos, voice recognition profiles and name tags, address books, favorite destinations, previous destinations, waypoints, and driver-designated areas to avoid. In addition to the variety of functions material to operating a vehicle, drivers can also record and space shift[2] music from their personal CDs to the Nav System's hard drive, on which such music is fixed amongst the software programs, databases, and other stored information.

By its own Complaint, Plaintiff admits that this feature of Defendants' Nav System consists of recording CDs to the system's own <u>hard drive, where the music is stored</u> with various software programs and other data.  It alleges nothing about making serial copies of CDs, digital audio tapes and the like.  Under a plain reading of the AHRA, these automobiles with a Nav System are not capable of making a "digital audio copied recording" of a "digital musical recording" as defined under the Act.  This is because the AHRA states that digital musical

---

[1] A hard drive is "a high-capacity data-storage device (as for a personal computer) consisting of a drive and one or more hard disks."  Webster's New International Dictionary, Unabridged (3d ed. 2014).

[2] "Space shifting" is a fair use of copyrighted material whereby a consumer may copy a musical recording the consumer has purchased "in order to render [it] portable" and playable on another device.  *See Recording Industry Ass'n of America v. Diamond Multimedia Systems Inc.*, 180 F.3d 1072, 1079 (9th Cir. 1999) (citing *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 455 (1984)).

recordings do not include (1) material objects in which one or more computer programs are fixed or (2) material objects in which data other than sounds are fixed.  Here, the Nav Systems are nothing less than automotive computers with hard drives containing both programs and data other than sounds.  They do not reproduce digital music recordings in materials objects addressed by the statute, that is, CDs, LPs, cassettes, or digital audio tapes.  The Nav Systems are outside the AHRA's scope.

## **STATEMENT OF FACTS**

Ford designs, manufactures, markets, and distributes cars and trucks in the United States, Complaint ¶ 38, and certain of these vehicles include navigation systems. Complaint, ¶ 39. Clarion manufactures, imports, and supplies Ford with navigation systems for such cars. *See* Complaint ¶ 39.  These vehicles and the Nav System are not found in consumer electronics stores, but instead are sold exclusively by Ford through automobile dealerships.  *See* Complaint ¶ 39.  The Complaint makes no allegations that Clarion sells its Nav System separate from Ford vehicles or that the Nav Systems would function outside of a Ford vehicle.  *See id.*  Notably, consumers must return to the dealership to service or repair their Nav System, as well as to purchase updates for their software.[3]  Ex. A at 8, 121.

---

[3] The Complaint specifically references a Ford "owner's manual," Complaint ¶¶ 43–44; a true and correct copy of this document is attached as **Exhibit A**.  In ruling on a motion to dismiss, "a court may consider . . . documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. D.C. Dep't of Youth Rehabilitation Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (internal quotation marks and citation omitted); *see also* Charles Alan Wright et al., Federal Practice and Procedure: Civil 3d § 1366, at 183–86.  "[A] plaintiff's complaint 'necessarily relies' on a document when the complaint 'quote[s] from and discuss[es a document] extensively.'"  *Page v. Mancuso*, 999 F. Supp. 2d 269, 275 (D.D.C. 2013) (quoting *W. Wood Preservers Inst. v. McHugh*, 292 F.R.D. 145, 149 (D.D.C. 2013) (alterations in original)).  Here, plaintiff has quoted from and discussed the manual extensively—indeed, Plaintiff has characterized the manual's entire contents by stating that the only significant purpose of the recording function described in the manual is the copying of music from a CD.  Complaint ¶¶ 43–44.  Further, as the Second Circuit has explained, "the problem that arises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff that they may be so considered."  *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d. Cir. 1991).  However, "[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated."  *Id.*  Since the complaint characterizes the entirety of the

The Nav Systems for Ford vehicles contain a variety of software programs on their hard drives, including navigation software, Ex. A at 121, 126, voice recognition software, *see* Ex. A at 32–41, and an operating system that controls the Nav System, allowing the user to "play DVDs . . . , navigate the vehicle and operate climate control functions," among other functions, *see* Ex. A at 5.   In addition to such software, the Nav System records and stores a variety of data on the hard drive, including photos, Ex. A at 23–24; voice recognition profiles and name tags, Ex. A at 38–40; an address book, favorite destinations, previous destinations, waypoints, or driver-designated areas to avoid, Ex. A at 93–96; and the maps used in the car's navigation system, Ex. A at 126.   There is also a feature whereby music on CDs can be copied and fixed onto the hard drive of the Nav System. Complaint ¶¶ 40, 43–44, 46.

As a result of the manufacture, distribution, and sale of cars featuring these Nav Systems, the AARC filed this class action lawsuit against Ford and Clarion, as well as other automobile manufacturers and suppliers, asserting five claims, including for injunctive relief (Counts I, III), damages (Counts II, IV), and declaratory relief (Count V) under 28 U.S.C. § 2201, all based on supposed violations of Sections 1003(a) and 1002(a) of the AHRA.

## ARGUMENT

## I.   APPLICABLE LEGAL STANDARD

Where, as here, a complaint fails to set forth a claim that is "plausible on its face," it must be dismissed.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To be plausible, the plaintiff's right to relief must be more than speculative. *See Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 931 (Fed. Cir. 2014).  In making this determination, the Court "must accept as true all of the factual allegations

---

manual's contents in framing the complaint, the plaintiffs have notice of the manual's contents.  Thus, the court may properly consider the manual in ruling on a 12(b)(6) motion to dismiss.  For the Court's convenience, the quotation from the owner's manual that appears in ¶ 43 of the Complaint may be found in Exhibit A on page 62.

contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), but it need not accept the complaint's legal conclusions. *Ashcroft*, 556 U.S. at 678.

All of the AARC's claims arise from the alleged violation of the AHRA due to the manufacture, distribution, and marketing of automobiles with navigation systems that enable consumers to space shift their CD collections from their homes to their cars. Under the plain meaning of the AHRA, these Nav Systems cannot plausibly reproduce digital musical recordings; therefore they cannot be deemed digital audio recording devices as defined under the AHRA. The AHRA, therefore, does not apply, mandating that AARC's complaint be dismissed.

## II.   NAV SYSTEMS ARE NOT DIGITAL AUDIO RECORDING DEVICES UNDER THE CONSTRUCTION & DEFINITIONAL FRAMEWORK OF THE AHRA

Only one other court has substantively analyzed the AHRA: the Ninth Circuit, in *Recording Industry Association of America v. Diamond Multimedia Systems, Inc.*, 180 F.3d 1072 (9th Cir. 1999). In *Diamond Multimedia*, the Ninth Circuit determined that the first MP3 player—the "Rio," which enabled a user to download digital music files from a computer hard drive to the Rio and listen to them outside of the home—was not a digital audio recording device under the AHRA. *Id.* at 1081. The decision is instructive.

"The [AHRA] does not broadly prohibit digital serial copying of copyright protected audio recordings. Instead, the Act places restrictions only upon a specific type of recording device." *Id.* at 1075. The AHRA prohibits the importation, manufacture, or distribution of "digital audio recording devices," as defined under the Act, unless (1) the devices implement a system to prevent serial copying and (2) the person importing, manufacturing, or distributing the devices files the notices and pays the royalties required by the statute. 17 U.S.C. §§ 1001–1003. The requirements of the AHRA only apply if the Nav System qualifies as a digital audio recording device. That is not the case here.

Under the set of nested definitions used to define the term "digital audio recording device," it is clear that the Nav System is not capable of making a "digital musical recording" as defined under the AHRA and is therefore not a digital audio recording device. This is consistent with prior case law and the legislative history. Further, because it is not a digital audio recording device capable of making serial copies, the requirements of the serial copying management system are not warranted. Accordingly, Plaintiff has not and cannot assert a valid claim for relief.

**A.     The Definitional Construct of a Digital Audio Recording Device**

Three definitions in the statute are critical to determining whether or not the Nav System is subject to the AHRA, namely, a "digital musical recording," 17 U.S.C. § 1001(5); a "digital audio copied recording," 17 U.S.C. § 1001(1); and a "digital audio recording device," 17 U.S.C. § 1001(3).

First, a *digital musical recording* is "a material object—(i) in which are fixed, in a digital recording format, only sounds, and material, statements, or instructions incidental to those fixed sounds, if any, and (ii) from which the sounds and material can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 1001(5)(A). However, a *digital musical recording* is not "<u>a material object . . . in which one or more computer programs are fixed</u>, except that a digital musical recording may contain statements or instructions constituting the fixed sounds and incidental material, and statements or instructions to be used directly or indirectly in order to bring about the perception, reproduction, or communication of the fixed sounds and incidental material." 17 U.S.C. § 1001(5)(B)(ii) (emphasis added).

Second, a *digital audio copied recording* is "a reproduction in a digital recording format of a *digital musical recording*, whether that reproduction is made directly from <u>another</u> *digital*

*musical recording* or indirectly from a transmission." 17 U.S.C. § 1001(1) (emphasis added). Critical here is the term "another," which makes clear that the resulting *digital audio copied recording* must itself be a *digital musical recording*, regardless of whether it was made directly from a *digital musical recording* or from a transmission of one.

Third, a *digital audio recording device* ("DARD") is defined as "any machine or device of a type commonly distributed to individuals for use by individuals, whether or not included with or as part of some other machine or device, the digital audio recording function of which is designed or marketed for the primary purpose of, and that is capable of, making a *digital audio copied recording* for private use." 17 U.S.C. § 1001(3) (emphasis added).

In order to be a DARD, the Nav System must be able to reproduce a *digital musical recording*. *See Diamond Multimedia*, 180 F.3d at 1076 ("In sum, to be a digital audio recording device, the Rio must be able to reproduce, either 'directly' or 'from a transmission,' a 'digital musical recording.'"). The Nav System is not capable of reproducing a *digital musical recording* and cannot qualify as a DARD.

## B.        The Nav System is Not Capable of Making a Digital Musical Recording

Unlike a CD burner or a tape deck, the Nav System does not create a separate material object like a CD or cassette tape on which music files are recorded. Instead, it records music from CDs and stores or fixes it on its own hard drive, which also houses software programs and other data. *See* Complaint ¶¶ 40, 43, 46; Ex. A at 62. The Nav System with its hard drive, therefore, is neither a DARD nor a *digital musical recording* under the AHRA.

In drafting the AHRA, Congress understood the term *digital musical recording* to include only physical objects like CDs on which solely sounds are fixed. In discussing the term "audiogram," which the Senate Bill used in place of the term *digital musical recording* that appeared in the final statute, *Diamond Multimedia*, 180 F.3d at 1077 n.5, the Senate Report

explained that the term was only intended "to cover those objects commonly understood to embody sound recordings and their underlying works."  S. Rep. No. 102-294, at 36 (1992).  To further clarify the point, the report listed the objects covered as "recorded compact discs, digital audio tapes, audio cassettes, long-playing albums, digital compact cassettes, and mini-discs."  *Id.* at 36 n.36; *see also id.* at 46 (repeating this list and implying that the *digital musical recording* is a physical object played using a separate device).  The Report also explained that "the term is intended to exclude objects such as recorded videocassettes and multimedia products (i.e., unitary products which integrate several prominent components such as text, video clips, computer graphics, speech, and music)."  *Id.* at 46.  Given this context, the Ninth Circuit rightly concluded that "[t]here are simply no grounds in either the plain language of the definition or in the legislative history for interpreting the term 'digital musical recording' to include songs fixed on computer hard drives."  *Diamond Multimedia*, 180 F.3d at 1077.

Applying the AHRA's plain language to the facts of this case will follow Congress's intent: music copied and fixed on the Nav System's hard drive cannot be a *digital musical recording* because the Nav System's hard drive contains software unrelated to playing music and data other than sounds.  As the Ninth Circuit recognized, a hard drive is a material object, but "almost all hard drives contain numerous programs . . . and databases that are not incidental to any sound files that may be stored on the hard drive."  *Id.* at 1076.  Here, the Nav System's hard drive contains multiple computer programs, including an operating system, *see* Ex. A at 5, navigation software, Ex. A at 121, 126, and voice recognition software, *see* Ex. A at 32–41.  This software bears no relation to the perception, reproduction, or communication of recorded music.  The hard drive also stores in a fixed form a variety of data, including photos, Ex. A at 23–24; maps, Ex. A at 126; and an address book, favorite destinations, previous destinations, and driver-

designated areas to avoid, Ex. A at 93–96.  These data are not fixed sounds and have nothing to

do with any sounds that might also be fixed on the hard drive.  Thus, music fixed on the Nav

System's hard drive does not fall under the Act's definition of a *digital musical recording*

because the hard drive contains computer programs unrelated to playing music and data other

than sounds.

Because the Nav System is not capable of reproducing *digital musical recordings*, it

cannot be deemed a DARD, and therefore is not subject to the requirements of the AHRA.[4]  The

following analysis of a *digital audio copied recording* manifests this conclusion as well.

### C.        A Hard Drive is Incapable of Creating Digital Audio Copied Recordings as Defined by the Audio Home Recording Act.

The Nav System's hard drive is not a DARD because it is incapable of making a *digital*

*audio copied recording* as the Act defines that term.  The AHRA defines a *digital audio copied*

*recording* as "a reproduction in a digital recording format of a *digital musical recording*, whether

that reproduction is made directly from <u>another</u> *digital musical recording* or indirectly from a

transmission."  17 U.S.C. § 1001(1) (emphasis added).  By the use of the word "another," the

plain language of the statute clearly indicates that the creation of a *digital audio copied*

*recording* involves two *digital musical recordings*: both the original and the copy itself.  This is

to say that both the source material and the copy must qualify as *digital musical recordings* as

defined in 17 U.S.C. § 1001(5).

As discussed above and as the Ninth Circuit recognized in *Diamond Multimedia*, music

stored on a hard drive clearly does not qualify under the Act's definition of a *digital musical*

---

[4] In *Diamond Multimedia*, the Court of Appeals for the Ninth Circuit also held that computers and their hard drives are not DARDs under the AHRA because, as a general matter, "[u]nlike digital audio tape machines, . . . whose primary purpose is to make digital audio copied recordings, the primary purpose of a computer is to run various programs and to record the data necessary to run those programs and perform various tasks."  180 F.3d at 1078.  The Ninth Circuit's conclusion that, categorically, the primary purpose of a computer is not to create *digital audio copied recordings* comports with Congress's clear intent to exclude computers from the AHRA's ambit.  *See infra* Section II.D.  While Defendants do not elaborate on this argument here, they reserve the right to do so.

*recording*.  See 180 F.3d at 1076–78; see also *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1024 (9th Cir. 2001) (reaffirming that "the Audio Home Recording Act does not cover the downloading of MP3 files to computer hard drives" and noting that "computers do not make 'digital musical recordings' as defined by the [AHRA]" (citing *Diamond Multimedia*, 180 F.3d at 1077–78)).  Indeed, the Ninth Circuit explicitly found the AHRA does not apply to digital music recorded either on to or off of a computer's hard drive. See *Diamond Multimedia*, 180 F.3d at 1078 ("[T]he Act seems to have been expressly designed to create this loophole.").

Applying the plain language of the AHRA to the Nav System results in the conclusion that any music stored on the Nav System's hard drive is not a *digital musical recording*.  Since the definition of a *digital audio copied recording* requires that both the original and the reproduced copy be *digital musical recordings*, and since any music copied and fixed on the Nav System's hard drive is not a *digital musical recording*, any music copied and fixed on the hard drive is not a *digital audio copied recording* under the AHRA.  Thus, the Nav System is, by the Act's definitions, incapable of making a *digital audio copied recording* and therefore is not a DARD.  17 U.S.C. § 1001(3).

### D.     The Audio Home Recording Act's Legislative History Evinces Congress's Clear Intent to Exclude Hard Drives and Computers from the Act's Reach.

The conclusion that the Nav System is not a DARD comports with Congress's clear intent to exclude computers and hard drives from the AHRA's reach.  *See* S. Rep. 102-294, at 35–36 (1992).  For example, the Senate Report accompanying the AHRA notes that a computer's "recording function is designed and marketed primarily for the recording of data and computer programs" and therefore concludes that "the typical personal computer would not fall within the definition of 'digital audio recording device.'"  *Id.* at 48.  As the Senate Report further explains, "if the 'primary purpose' of the recording function is to make objects other than digital audio

copied recordings, then the machine or device is not a 'digital audio recording device,' even if the machine or device is technically capable of making such recordings." *Id.* at 47–48.  In the instant case and as reflected in the owner's manual, the Nav System's recording function goes well beyond music: the Nav System's hard drive records and stores both programs (e.g., an operating system, navigation software, and voice recognition software) and data (e.g., photos, maps, voice recognition profiles and name tags, etc.).  *See supra* Section II.B.  The general nature of the hard drive's recording function is also critical to the Nav System's operation insofar as it allows the driver to add new information to the System, *e.g.*, Ex. A at 95 (destinations, waypoints, and areas to avoid), and to update the System's software and maps, Ex. A at 121.

The exclusion of computers from the statute's reach is clear from the Senate Report and confirmed by case law interpreting the AHRA.  *See supra* Section II.B; *Diamond Multimedia*, 180 F.3d at 1076–79.  As the Ninth Circuit concluded, "[t]he [Act's] legislative history thus expressly recognizes that computers (and other devices) have recording functions capable of recording digital musical recordings, and thus implicate" the concerns underlying the Act.  *Id.* at 1078.  Nevertheless, the AHRA's legislative history clearly shows the intent of Congress to exclude computers and their hard drives from the Act's scope.  *See id.* at 1078 n.6 (noting that the "exclusion of computers from the Act's scope was part of a carefully negotiated compromise between the various industries with interests at stake, and without which, the computer industry would have vigorously opposed passage of the Act").

## III. THE CLEAR PURPOSE OF THE AUDIO HOME RECORDING ACT WAS TO PREVENT SERIAL COPYING, BUT AARC HAS FAILED TO PLEAD THAT THE CLARION NAV SYSTEM CREATES SERIAL COPIES

The AHRA's legislative history shows the Act was the solution to the problem of "serial copying" created by the introduction of digital audio tape recorders in the late 1980s.  A "serial copy" is a copy of a musical recording created from another copy of that recording as opposed to

a copy created from the original musical recording.  H.R. Rep. No. 102-873, pt. 1, at 19 (1992); S. Rep. No. 102-294, at 36 (1992).  The House Report notes that "[t]he genesis of the legislation was concern by copyright owners that the fidelity of digital reproductions of recorded music would lead to massive unauthorized copying, significantly displacing sales."  H.R. Rep. No. 102-873, pt. 1, at 18.  In other words, the record companies were concerned that the ability to create a copy of a musical recording from another copy without any loss of sound quality would encourage consumers to copy those musical recordings instead of buying them.  *See id.* at 12; S. Rep. No. 102-294, at 32.  To combat this problem, the AHRA requires DARDs to implement the Serial Copy Management System in order to prevent those devices from making serial copies. 17 U.S.C. § 1002.

The Serial Copy Management System does not forbid all copying, however; it allows consumers to "make an unlimited number of copies from the original" digital musical recording, but only prohibits consumers from "copy[ing] the copy."  S. Rep. No. 102-294, at 36.  The AARC has alleged only that the Nav System allows users to copy music from CDs in their personal collection.  Complaint ¶ 46 (quoting a Ford press release as stating that "[t]he 'jukebox' feature . . . can store up to 2,400 songs in high-fidelity digital format from the user's CD collection.").  The copying that AARC describes in its complaint consists only of copying from original digital musical recordings—the user's CD collection—and not of copying from copies.[5] The Serial Copy Management System would allow the Clarion Nav System to make such copies from original CDs, and those copies from originals represent a paradigmatic example of fair use by space shifting.  *Diamond Multimedia*, 180 F.3d at 1079.  AARC fails to allege any serial

---

[5] Any argument that users regularly copy from serially copied CDs onto the Nav System rather than from originals would be purely speculative on AARC's part.  Indeed, AARC has made no such allegation in their complaint. Further, to the extent that AARC made any such allegation, its complaint would be against the device or person that made those copied CDs and not against Ford or Clarion.

copying from the Clarion Nav System—that is, creating a copy fixed in some other object *from* the copy that exists on the Nav System's hard drive. Instead, AARC only alleges the creation of copies on the Nav System's hard drive from a user's CD. Complaint ¶¶ 40, 43–44, 46. Any such allegation by AARC that the Nav System could create a copy in some other object from the copy that exists on the Nav System's hard drive would be spurious. *See generally* Ex. A (describing no method by which a user could create a copy of a musical recording fixed into some other medium from the copy that is fixed in the Nav System's hard drive). The Nav System is like the Rio device in *Diamond Multimedia* because neither device allows the user to copy music off of the device. *See Diamond Multimedia*, 180 F.3d at 1075 (noting that the Rio device "cannot make duplicates of any digital audio files it stores, nor can it transfer or upload such a file to a computer, to another device, or to the Internet"). Since the Nav System, like the Rio before it, does not engage in serial copying, the AHRA does not apply.

## CONCLUSION

Plaintiff's claims against Defendants must be dismissed because they are not plausible on their face. Even if the Court were to accept the factual allegations in the Complaint, Defendants' Nav System cannot be a DARD subject to the AHRA given the nature of the recordings it makes. Because it records CDs only to its own hard drive, any music fixed on the hard drive is not a *digital musical recording* as the statute defines that term. The Ninth Circuit has previously reached this precise conclusion. Consequently, music fixed on the Nav System's hard drive will never qualify as a *digital audio copied recording*. Thus, the Nav System cannot be a DARD because it is by definition incapable of creating *digital audio copied recordings* under the AHRA. Moreover, Plaintiff asks this Court to enforce the AHRA in a way that is not only inconsistent with, but diametrically opposed to, the stated purpose of that Act. The perceived economic harms the AHRA seeks to redress are simply not implicated by consumers listening to

their own CDs in their cars.  Thus, the fact that Defendants' Nav System falls squarely into the statute's enumerated exceptions should come as no surprise.

In sum, the AARC fails to state any claim upon which relief can be granted.  For the reasons discussed, Defendants Ford and Clarion respectfully request that the Court grant their Motion, dismiss the AARC's complaint in its entirety, and grant the Defendants any such further and favorable relief as the Court deems just.

Dated:        Oct. 10, 2014                    Respectfully submitted,

/s/ Van H. Beckwith
Van H. Beckwith (admitted *pro hac vice*)
Paul J. Reilly (admitted *pro hac vice*)
Baker Botts L.L.P.
2001 Ross Avenue
Dallas, TX 75201-2980
Telephone: (214) 953-6505
Facsimile:  (214) 661-4505
E-mail:  Van.Beckwith@bakerbotts.com
E-mail:  Paul.Reilly@bakerbotts.com

Joshua H. Packman (D.C. Bar No. 1015463)
Baker Botts L.L.P.
1299 Pennsylvania Avenue, NW
Washington, DC 20004-2400
Telephone: (202) 639-7726
Facsimile:  (202) 585-1053
E-mail:  Joshua.Packman@bakerbotts.com

*Counsel for Defendants Ford Motor Company and*
*Clarion Corporation of America*

- 14 -

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2014, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, and that a copy was served on the following

counsel of record via ECF:

Andrew Phillip Bridges
Fenwick & West, LLP
555 California Street
Suite 1200
San Francisco, CA 94104
(415) 875-2300
abridges@fenwick.com

Richard Brian Dagen
Michael D. Bednarek
Axinn, Veltrop & Harkrider LLP
950 F Street, NW
Washington, DC 20004
(202) 721-5418
Fax: (202) 326-3384
rdagen@axinn.com
mbednarek@axinn.com

Annette L. Hurst
Orrick, Herrington & Sutcliffe LLP
405 Howard Street
San Francisco, CA 94105-2669
(415)-773-5700
ahurst@orrick.com

Steven John Routh
Orrick, Herrington & Sutcliffe LLP
1152 15th Street, NW
Washington, DC 20005
(202) 339-8400
Fax: (202) 339-8500
Email: srouth@orrick.com

/s/ Van H. Beckwith
Van H. Beckwith

*Counsel for Defendants Ford Motor Company and Clarion Corp. of America*