UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

)
ALLIANCE OF ARTISTS AND )
RECORDING COMPANIES, INC., )
                                      )
          Plaintiff, )
                                      )
          v. )          Civil Action No. 14-cv-1271 (KBJ)
                                      )
GENERAL MOTORS COMPANY, *et* )
*al.*, )
                                      )
          Defendants. )
                                      )

**MEMORANDUM OPINION AND ORDER REGARDING
PLAINTIFF'S MOTIONS FOR RECONSIDERATION AND CLARIFICATION**

On February 19, 2016, this Court issued a Memorandum Opinion and Order that addressed a threshold question of law regarding the applicability of the Audio Home Recording Act of 1992 ("AHRA"), 17 U.S.C. §§ 1001–1010, to various in-car audio devices that Defendants manufacture and distribute. *See All. of Artists & Recording Cos., Inc. v. Gen. Motors Co.* ("*AARC*"), No. 14-cv-1271, 2016 WL 695983 (D.D.C. Feb. 19, 2016). The Court resolved a vigorous dispute over the proper interpretation of the AHRA, holding that devices such as Defendants' can constitute "digital audio recording devices" ("DARDs") as the AHRA defines that term, *see* 17 U.S.C. § 1001(3), and thus that the devices at issue (as described in Plaintiff's complaint) might well give rise to a statutory obligation on the part of Defendants to pay royalties to the AARC and implement certain copying control technology. *See AARC*, 2016 WL 695983, at *11–13. But the Court also concluded that these duties were triggered only if the devices did, in fact, produce "digital audio copied recordings" ("DACRs") that

satisfy the statute's definition of a "digital music recording" ("DMR," the statute's term of art for a DARD's input, *see* 17 U.S.C. § 1001(5)), and that discovery would be required in order to ascertain whether any of the Defendant's recording devices actually produced recordings that met the prescribed statutory elements of a DMR. *See AARC*, 2016 WL 695983, at *8–11, 12. Thus, although the Court held that Plaintiff's complaint stated a claim and Defendants' dispositive Rule 12 motions had to be denied, it reached this conclusion on the basis of a significantly narrower reading of the statute than Plaintiff had urged. *See id.* at *11–12, 13.

Before this Court at present are two motions that the AARC has filed pertaining to the Court's opinion. In the first of the two motions, the AARC implores the Court to reconsider the interpretation of the AHRA that the Court adopted, on the ground that the Court misunderstood the statute's legislative history. (*See* Pl. AARC's Mem. in Supp. of Mot. for Partial Recons. ("Pl.'s Recons. Mem."), ECF No. 81-1, at 5–7.)[1] The second motion seeks to have the Court clarify the extent of its holding as it relates to a certain *type* of device (a hard drive with partitioned segments), or, alternatively, certify for interlocutory review the case's central conclusion about how the AHRA should be interpreted. (*See* Pl. AARC's Mem. in Supp. of Mot. for Clarification ("Pl.'s Clarification Mem."), ECF No. 82-1, at 5–6.) Defendants oppose both motions (*see generally* Defs.' Joint Mem. in Opp'n to Pl's. Mots. ("Defs.' Mem."), ECF No. 90), and this Court has now carefully considered the myriad arguments both parties have made with respect to the AARC's requests. As explained below, this Court concludes that Plaintiff's motion for reconsideration must be **DENIED** because its interpretation of the

---

[1] All citations to documents that the parties have filed refer to the page numbers that the Court's electronic filing system assigns.

relevant statutory history is unpersuasive and cannot, in any event, overcome the plain text of the statute.  However, because this Court agrees with Plaintiff that its opinion is ambiguous with respect to whether or not a hard drive partition can constitute a DACR under the statute, the AARC's motion for clarification is **GRANTED**, and the Court's prior opinion is clarified herein, to dispel the contention that hard drive partitions are categorically precluded.

I.         **THE AARC'S MOTION FOR RECONSIDERATION**

    A.       **Applicable Legal Standard**

Federal Rule of Civil Procedure 54(b) governs the reconsideration of court orders that "do not constitute a final judgment in a case." *See Pierce v. Dist. of Columbia*, 146 F. Supp. 3d 197, 198 (D.D.C. 2015) (citation omitted).  Such relief "is available as justice requires, which amounts to determining, within the Court's discretion, whether reconsideration is necessary under the relevant circumstances." *Id.* (quoting *Prince George's Hosp. Ctr. v. Advantage Healthplan Inc.*, 985 F. Supp. 2d 38, 42 (D.D.C. 2013)); *see also Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011).

Generally, reconsideration is warranted "where the court has patently misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or a controlling or significant change in the law has occurred." *Pierce,* 146 F. Supp. 3d at 198 (quoting *Clayton v. Dist. of Columbia*, 931 F.Supp.2d 192, 210 (D.D.C. 2013)).  Some courts have also said that justice requires reconsideration where the court has "made an error . . . of apprehension," including a "failure to consider data that might reasonably be

expected to alter the conclusion reached[.]" *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (internal quotation marks and citation omitted).

> **B.     This Court Is Not Persuaded That It Has Misapprehended The Legislative History Of The AHRA**

The AARC requests reconsideration of this Court's conclusions regarding the AHRA on the ground that the Court "misapprehended" relevant legislative history, which, in turn, purportedly led the Court to misinterpret the statute. (Pl.'s Recons. Mem. at 5–7.) Notably, the AARC's contention does not relate to the Court's affirmative analysis of the AHRA's text, but is based on a segment of the Court's opinion that addresses (and rejects) an argument that the AARC had made regarding surplusage. *See AARC*, 2016 WL 695983 at *10. The specifics of that unsuccessful, manifestly peripheral argument are laid out fully in the opinion; it suffices to say here that the Court rejected the AARC's argument that "defendants' interpretation renders superfluous the phrase 'in a digital recording format' in the DACR definition[,]" because in the Court's view, the "statute's drafting history" revealed a "scrivener's error." *Id.*

Specifically, the Court explained that when Congress deleted the term "audiogram" (which encompassed analog recordings) and inserted the term "digital musical recording" in the definition of a DACR, it did so to convey its intent that the DARD definition should be read to capture only those devices that could create digital copies of *digital* recordings. *See id.* ("Congress changed 'audiogram' to 'digital musical recording,' thereby requiring that both the DARD's input and its output be in a digital format."). The Court continued: "[b]ut the phrase 'in a digital format' remained in [the DACR definition]—a relic of the earlier draft, when it had meaning." *Id.*  The

4

AARC now insists that a proper understanding of the legislative history reveals that a DARD's input can be *either* analog *or* digital.  (*See* Pl.'s Recons. Mem. at 6 ("Congress intended to include devices that recorded analog inputs as digital output as DARDs."); *see also* Pl.'s Reply Br., ECF No. 92, at 8 ("[W]hen analog sources are reproduced in a digital recording format, the result qualifie[s] as a [digital audio copied recording]." (internal quotation marks omitted).)  And to the AARC, this revelation means that the Court was wrong in its broader holding that a DACR has to be a type of DMR, and thus must satisfy the statute's DMR definition.  (*See* Pl.'s Recons. Mem. at 6 ("Because analog sources can be inputs to DARDs . . . it is clear that the Act does not assume that a DACR is equivalent to or necessarily an example of a DMR.").)

Even assuming *arguendo* that a mistaken conclusion regarding a tangential point of legislative history suffices to upend a court's interpretation of the plain text of a statute, the AARC has not made a persuasive argument that this Court actually erred when it viewed the change from "audiogram" to "digital musical recording" as evidencing Congress's intent to "requir[e] that both the DARD's input and its output be in a digital format."  *AARC*, 2016 WL 695983 at *10.  The AARC bases its contention that the change from "audiogram" to "digital musical recording" was *not* intended to signal that the DARD's input (the DMR) must be digital upon various quotes from the House Report that accompanied H.R. 3204, one of which appears to indicate that the Judiciary Committee still envisioned the Act as addressing the copying of both analog and digital sources, despite the drafter's adoption of the term "digital musical recording."  (*See* Pl.'s Recons. Mot. at 10–11 (quoting H.R. Rep. No. 102-873, pt. 1, at

19 (1992).)[2] Another section of the same report discusses copyright immunity; the AARC emphasizes its statement that "[i]n the case of home taping, the exemption protects all noncommercial copying by consumers of *digital and analog musical recordings*." *Id.* at 24 (emphasis added). But careful review of the legislative record reveals that these excerpts from a House committee report are not the smoking guns that the AARC makes them out to be.

First of all, as Defendants rightly point out, neither excerpt specifically addresses the meaning of the term "digital musical recording" as it is defined in 17 U.S.C. § 1001(5), which, after all, is the only statutory phrase whose interpretation is at issue here. (*See* Defs.' Mem. at 8.) Moreover, in the section of the report that actually discusses Congress's adoption of the term "digital musical recording," the Committee explains its intent in a manner that belies the AARC's argument that a "digital musical recording" for the purpose of the statute could be in either a digital or an analog format: "[t]he Committee believes that the better approach is to adopt a new term that addresses the copying *of digitally formatted music*, and thus 'digital musical recording' was selected." H.R. Rep. No. 102-873, pt. 1, at 17 (emphasis added); (*see* Defs.' Mem. at 8–9). Defendants also aptly observe that Congress appeared to understand the distinction between analog recordings and digital recordings, and even more important,

---

[2] The pertinent passage from the House Report reads:

> Even though the focus of the legislation is on digitally-formatted music, the Committee recognizes both that a significant amount of such music was (or may continue to be) recorded by analog rather than digital means, and, that *recorded music issued in an analog format may also be copied onto a digital format. The term "serial copying" encompasses musical works and sound recordings whether originally recorded in a digital or an analog format and then copied into digital form.*

H.R. Rep. No. 102-873, pt. 1, at 19 (emphasis added).

that when it intended to capture *both* media, it did so in a crystal clear fashion.  That is, while the term "audiogram" was replaced with the phrase "digital musical recording" in the DACR definition, 17 U.S.C. § 1001(5), Congress replaced "audiogram" with the more fulsome phrase "digital musical recordings or analog musical recordings" elsewhere in the AHRA.  *Compare* 17 U.S.C. § 1008, *with* S. Rep. No. 102-294, at 2 (1992).  Given this, the Court agrees with Defendants' contention that the drafters acted intentionally when they set about to replace "audiogram" throughout the AHRA, which means that they most likely did *not* intend for the term "digital musical recording" in the provisions at issue here to include analog musical recordings, as the AARC now asserts.

The AARC is also hard-pressed to explain how the murky legislative history upon which it relies can support the conclusion that a "digital musical recording" (the DARD's input) could be either analog or digital, when the term "digital musical recording" *expressly incorporates* the word "digital" to identify the relevant musical recordings.  The contention that Congress somehow nevertheless meant that a "*digital* musical recording" could be analog *or* digital flies in the face of the plain text of the statute, and the AARC offers no support for its implicit suggestion that a statute should not be interpreted to mean what it says.  And if looking at the moniker that Congress selected when it defined the term at issue is not enough to put to rest the AARC's assertions regarding the scope of the term "digital musical recording," the veritable death-knell is the fact that a "digital musical recording" is specifically defined as "a material object . . . in which are fixed, *in a digital recording format*, only sounds [etc.] . . . ."  17 U.S.C. § 1001(5)(A)(i).  Accepting the AARC's contentions would require

7

concluding that Congress' use of the phrase "in a digital recording format" in the DMR definition was itself a mistake, because Congress *really* meant that the sounds could be fixed in *either* a digital *or* an analog format, and, in this Court's view, *that* interpretation of 17 U.S.C. § 1001(5) is even more problematic than the surplusage concern that prompted the AARC to plumb the depths of the AHRA's legislative history in the first place.[3]

The bottom line is this: a request for reconsideration of a court's ruling should be granted only under a relatively narrow set of circumstances, *see* Fed. R. Civ. P. 54(b), and the AARC has failed to present a persuasive argument that this Court has fundamentally misapprehended the legislative history related to its statutory interpretation in a manner that warrants reconsideration. Consequently, the AARC's motion for reconsideration is denied.

## II.    THE AARC'S MOTION FOR CLARIFICATION

A "motion for clarification" is not a formal creature of civil procedure; it appears nowhere in the Federal Rules. Nevertheless, federal courts permit parties to tender motions that beseech the court "to explain or clarify something ambiguous or vague"

---

[3] Notably, even if the AARC had managed to demonstrate that Congress intended for the term "digital musical recording" to include analog musical recordings, it is not at all clear that this finding leads inexorably to the conclusion that the Court's interpretation of the AHRA—which reads that statute to require that only devices in which the output (the DACR) meets the statutory requirements of a DMR (the input) qualify as a DARD—was erroneous. This is because the indisputable goal of parsing these various definitions is to ascertain whether, and to what extent, a device counts as a DARD, and the statute plainly states that a device is a DARD if it can make "a reproduction in a digital recording format of a digital musical recording." 17 U.S.C. §§ 1001(1), 1001(3). To be sure, the AARC may well be right that there are devices with even *greater* capabilities—i.e., machines that can make digital reproductions of *both* analog recordings *and* digital recordings. (*See* Pl.'s Recons. Mem. at 10.) But nothing in the plain text of the statute suggests that the capacity to make digital reproductions of *analog* sources matters from the standpoint of the DARD definition, which means that the AARC's robust effort to persuade the Court that analog recordings were included in the statutory definition of a digital musical recording appears to be much ado about nothing.

8

about a ruling, but not to "alter or amend" it.  *United States v. Philip Morris USA, Inc.*, 793 F. Supp. 2d 164, 168 (D.D.C. 2011) (quoting *Resolution Trust Corp. v. KPMG Peat Marwick*, No. 92-1373, 1993 WL 211555, *2 (E.D. Pa. June 8, 1993)) (internal quotation marks omitted).  Although such a motion cannot open the door to "re-litigat[ing] a matter that the court has considered and decided," *Sai v. Transp. Sec. Admin.*, No. 14-cv-403, slip op. at 5 (D.D.C. Aug. 19, 2015), ECF No. 74 (citation omitted), courts in this Circuit have encouraged parties to file motions for clarification when they are uncertain about the scope of a ruling, *see United States v. Volvo Powertrain Corp.*, 758 F.3d 330, 344 (D.C. Cir. 2014); *Barnes v. Dist. of Columbia*, 289 F.R.D. 1, 12–13 (D.D.C. 2012), and entertaining such motions seems especially prudent if the parties must implement the ruling at issue at subsequent stages of the litigation.

Here, the AARC makes a relatively specific series of requests regarding the Court's prior opinion: it asks the Court to clarify whether "a distinct hard drive *partition* or logical disk on which are fixed, in a digital recording format, only sounds, and material, statements, or instructions incidental to those fixed sounds" could constitute a digital musical recording under 17 U.S.C. § 1001(5).  (Pl.'s Clarification Mem. at 5 (emphasis in original)); *see also id.* at 6–12 (urging that a qualifying partition should count as a DACR under the statute).)  In the alternative, the AARC suggests that the Court could "clarify that the issue [regarding partitioned hard drives] requires discovery" (*id.* at 8), or that the Court's opinion "left open the question" of whether or not hard drive partitions count (*id.* at 11).  Defendants argue that no such clarification is required, because there is "nothing ambiguous or vague in the Court's

9

Memorandum Opinion or Order" (Defs.' Mem. at 15); in Defendants' view, the clear upshot of the Court's opinion is that "[n]either a hard drive, nor any virtual segment of it, can be a DMR when that hard drive includes more than sounds and incidental material[]" (*id.* at 10; *see also id.* at 10–16 (asserting that a partition is not "material"; that allowing a partition to be a DACR is inconsistent with the AHRA's statutory scheme; and that Plaintiff's cited cases are inapposite)).

As an initial matter, this Court concludes that the AARC has met the threshold requirements for seeking clarification, insofar as the Court's opinion is reasonably susceptible to differing interpretations with respect to the "particular factual situation" of partitioned hard drives. *Philip Morris USA*, 793 F. Supp. 2d at 169. That ambiguity is apparent from the dueling briefs before the Court now: the AARC believes that nothing in the opinion precludes a finding that a hard drive partition that contains only music files constitutes a DACR (*see* Pl.'s Clarification Mem. at 8–12), while Defendants believe that the opinion unambiguously forecloses such an interpretation (*see* Defs.' Mem. at 10–16). The Court's opinion does not directly address whether a partition of a hard drive could be a "material object" under 17 U.S.C. § 1001(5), and Plaintiff has excerpted various quotes from the opinion that plausibly could be read in either party's favor, and that thereby create real uncertainty about the scope of the ruling. Under these circumstances, clarification is warranted. (*See, e.g.*, Pl.'s Clarification Mem. at 8 (quoting *AARC*, 2016 WL 695983 at *8, *11); *id.* at 9 (quoting *AARC*, 2016 WL 695983 at *10, 11); *id.* at 10 (quoting *AARC*, 2016 WL 695983 at *12); *id.* at 11 (quoting *AARC*, 2016 WL 695983 at *12).)

Turning to the merits of the question at issue, this Court hereby clarifies that it agrees with the AARC's contention that its opinion does not *preclude* the possibility that a hard drive partition could constitute a DACR under the statute. The AARC is correct that certain statements in the Court's opinion leave the door open to a conclusion that a hard drive partition is a DACR: phrases like "such that" and "in a manner that" do cabin the Court's characterizations of the Defendants' devices and the ways in which they might constitute DARDs for AHRA purposes. (*See* Pl.'s Clarification Mem. at 10 (quoting *AARC*, 2016 WL 695983 at *12).) Furthermore, the particular issue of the applicability of the Court's statutory interpretation to partitioned hard drives was not previously briefed, and the language the Court used to explain its holding regarding the requirements of a DACR—i.e., that a DACR must satisfy the statutorily prescribed elements of a DMR—was by no means intended to convey the Court's conclusions regarding whether, and to what extent, the DMR elements are actually satisfied with respect to Defendants' audio devices. To the contrary, the Court's opinion explicitly states that, while "[i]t is entirely possible that the output of defendants' devices do, in fact, contain computer programs and other data not incidental to the recorded audio files such that the devices fall outside the AHRA's DARD definition," a period of discovery would be needed in order to ascertain "the exact nature of these devices[.]" *AARC*, 2016 WL 695983 at *12; *see also id*. at 12 n.9 (declining to "consider additional factual information about the devices at this time[,]" and noting that "a full factual accounting will occur at the next stage of litigation").

To the extent the Court's pronouncements might nevertheless be read to prevent the AARC from arguing that a partitioned hard drive qualifies as a DACR in the context

of subsequent proceedings regarding the particular devices at issue in this case, this Court announces here that it had no such intention and that its opinion should not be read to have any such effect. But the Court will go no further at this time; the application of the AHRA in this context is a complicated, fact-bound endeavor and, thus, must await discovery. In this Court's considered judgment, the best course of action is not to attempt to answer the intricate issue of whether hard drive partitions satisfy the Court's understanding of the requirements of DACRs in the abstract, but to do so in the context of the specific devices at issue in this case, and the Court will have the benefit of a full record and more comprehensive briefing to address this highly technical question at the summary judgment stage.

## III. ORDER

Plaintiff AARC has sought reconsideration (ECF No. 81) and clarification (ECF No. 82) of the Court's Memorandum Opinion and Order of February 19, 2016, which denies Defendants' motions to dismiss and for judgment on the pleadings. For the reasons discussed above, it is hereby

**ORDERED** that Plaintiff's [81] Motion for Partial Reconsideration is **DENIED**, and Plaintiff's [82] Motion for Clarification, Or, In The Alternative, Certification for Interlocutory Appeal is **GRANTED**.[4]

DATE: August 22, 2016

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge

---

[4] Given that the Court has granted Plaintiff's motion to clarify, it need not address Plaintiff's alternative request for certification of the opinion's holding for interlocutory appeal. (*See* Pl.'s Clarification Mem. at 12 (requesting certification for interlocutory appeal only "[i]f the Court decides not to reconsider its decision . . . or clarify its decision . . .").)