## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ALLIANCE OF ARTISTS AND RECORDING COMPANIES, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 14-cv-1271 (KBJ) |
| GENERAL MOTORS COMPANY, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

## <u>MEMORANDUM OPINION</u>

In the technological world that existed at the time that Congress enacted the Audio Home Recording Act of 1992 ("AHRA"), 17 U.S.C. §§ 1001 *et seq.*, the music industry faced an existential threat brought on by Digital Audio Tape ("DAT") machines and similar devices that could produce copies of music recordings serially, without any loss in quality.  The AHRA was designed to address this problem; with that legislation, Congress amended federal copyright law to require manufacturers, importers, and distributers of such "digital audio recording devices" ("DARDs") to implement certain copying control technology with respect to their recording machines and to pay a per-device royalty fee to a specified non-profit organization—the Alliance of Artists and Recording Companies ("AARC")—which would distribute the royalties to recording artists and copyright owners.  Notably, the AHRA also represented a careful compromise between the music industry and the high-tech industry, because the digital music recordings produced in the context of then-emerging computer technology

were intentionally carved out of the statutory scheme.  *See Alliance of Artists & Recording Cos. v. Gen. Motors Co.* ("*AARC I*"), 162 F. Supp. 3d 8, 20 (D.D.C. 2016).

As often happens, recording technology has evolved significantly since the enactment of the AHRA, and in the instant lawsuit, this Court must determine whether that statute should extend to a more recent innovation: in-vehicle audio recording devices that copy music from CDs onto hard drives within the devices, allowing the music to be played back inside the vehicle even without the CD.  AARC has filed this action against three suppliers of such devices (DENSO International America, Clarion Corporation of America, and Mitsubishi Electric Automotive America), along with three automobile manufacturers that have sold vehicles containing such recording devices (General Motors Company, Ford Motor Company, and FCA US, respectively).[1] AARC contends that Defendants' automobile recording devices constitute DARDs within the meaning of the AHRA, and that Defendants have violated the AHRA's prescriptions by failing to pay royalties and adopt the required copying control technology with respect to these devices.  (*See* GM Compl., ¶¶ 53–70; FCA Compl., ¶¶ 52–70.)  This Court has already made two forays into the thicket of issues that this case presents, having previously resolved two motions to dismiss, as well as motions for reconsideration and clarification.  *See AARC I*, 162 F. Supp. 3d 8; *Alliance of Artists & Recording Cos., Inc. v. Gen. Motors Co.* ("*AARC II*"), No. 14-cv-1271, 2016 WL 9963947 (D.D.C. Aug. 22, 2016).

---

[1] AARC filed two substantively identical complaints against two different groups of automakers and suppliers (*see* Compl. ("GM Compl."), ECF No. 1; Compl. ("FCA Compl."), *Alliance of Artists & Recording Cos. v. Chrysler Grp.*, No. 14-cv-1920 (D.D.C. Nov. 14, 2014), ECF No. 1), which this Court has consolidated into a single case (*see* Minute Order of Feb. 10, 2015).  Defendant FCA US LLC originally appeared in this case as "Chrysler Group LLC" (*see* FCA Compl.), but this Court granted FCA leave to change its name (*see* Min. Order of Feb. 12, 2015, *Alliance of Artists & Recording Cos. v. Chrysler Grp.*, No. 14-cv-1920 (D.D.C. Feb. 12, 2015)).

Before this Court at present are the parties' cross-motions for summary judgment, which ultimately seek to answer the same legal question that was at the focus of the Court's prior opinions in this case: whether, as a matter of statutory interpretation, Defendants' in-vehicle music recording devices are DARDs, and are thus covered by the AHRA. Defendants argue that information produced in discovery has indisputably demonstrated that the hard drives of their devices contain materials that are not incidental to the music stored on them, such that their devices do not fit under the statutory definition of a DARD. AARC does not deny that the hard drives in Defendants' devices contain non-music-related materials, but argues that the devices nevertheless satisfy the AHRA's DARD definition because the hard drives have "partitions" that contain only music and materials incidental to the music.

For the reasons explained below, this Court finds that Defendants' devices are not DARDs for the purpose of the AHRA. The Court agrees with Defendants that a hard drive itself is a material object under the statute, and that because the evidence establishes that each of the hard drives contained in Defendants' devices has data and information not incidental to the music recorded on them, the hard drives at issue here do not constitute "digital audio copied recordings" under the AHRA, which means that Defendants' devices do not constitute DARDs. The Court further rejects AARC's hard drive "partition" theory, because AARC has not demonstrated that a partition is a *distinct* object that is a separate component of the hard drive on which it sits, and even if it does have a separate physical existence, AARC has not established that the partition, as opposed to the whole hard drive, is the *relevant* material object as far as the AHRA's definitions are concerned. Accordingly, the Court will **GRANT**

Defendants' Joint Motion for Summary Judgment (ECF No. 111), and **DENY** the three motions for partial summary judgment that Plaintiff has filed in regard to its claims against GM and Denso, Ford and Clarion, and FCA and Mitsubishi, respectively (ECF Nos. 115, 116, 117).  A separate order consistent with this Memorandum Opinion will follow.

## I.   BACKGROUND

### A.   Prior Proceedings

This Court has issued two previous written opinions in this matter.  *See AARC I*, 162 F. Supp. 3d 8; *AARC II*, 2016 WL 9963947.  The factual basis and procedural history of the instant dispute, as well as the AHRA's statutory framework and legislative history, are discussed at length in the Memorandum Opinion that the Court issued on February 19, 2016, *see AARC I*, 162 F. Supp. 3d at 9–15, and those facts and findings are expressly incorporated herein.

For present purposes, it suffices to reiterate that Congress intended the AHRA to reflect a careful compromise brokered between the music and high-tech industries.  *See The Audio Home Recording Act of 1991: Hearing on S. 1623 Before the S. Subcomm. on Patents, Copyrights & Trademarks of the S. Comm. on the Judiciary*, 102d Cong. 1 (1991) (statement of Sen. Dennis DeConcini) ("[The AHRA] represents a historical compromise among opposing segments of the entertainment and electronic industries.").  Accordingly, in drafting the statute, Congress limited its application to only a specific type of recording device—what it called a "digital audio recording device" or "DARD"—and it painstakingly defined what constitutes a DARD using a complex set of nested definitions.  *See AARC I*, 162 F. Supp. 3d at 11 (noting that Congress has

defined a DARD in "an intricate set of interlocking (and non-intuitive) definitions" (internal quotation marks and citation omitted)).

In sum, under the AHRA, a DARD is any machine for private use that has a recording function that is capable of, and has the primary purpose of, making a "digital audio copied recording" ("DACR").  *See* 17 U.S.C. § 1001(3).  In other words, a DARD is a device that produces a DACR.  And the statute defines a DACR as "a reproduction in a digital recording format of a digital musical recording [("DMR")], whether that reproduction is made directly from another digital musical recording or indirectly from a transmission."  *Id.* § 1001(1).  Thus, a DACR is a reproduction of a DMR in a digital recording format.  *See AARC I*, 162 F. Supp. 3d at 12 (emphasizing that a DACR is a reproduction of a DMR).

Down another level, the AHRA defines a DMR is defined as follows:

(A) A "digital musical recording" is a material object—

(i) in which are fixed, in a digital recording format, only sounds, and material, statements, or instructions incidental to those fixed sounds, if any, and

(ii) from which the sounds and material can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device.

(B) A "digital musical recording" does not include a material object—

(i) in which the fixed sounds consist entirely of spoken word recordings, or

(ii) in which one or more computer programs are fixed, except that a digital musical recording may contain statements or instructions constituting the fixed sounds and incidental material, and statements

5

> or instructions to be used directly or indirectly in order to bring about the perception, reproduction, or communication of the fixed sounds and incidental material.

*Id.* § 1001(5).  In essence, this means that a DMR is a material object that contains only sounds and data incidental to those sounds, although a material object is *not* a DMR if it only contains spoken word recordings, or if it contains one or more computer programs. *See AARC I*, 162 F. Supp. 3d at 12.

At the motion to dismiss stage, this Court addressed the threshold legal question of whether the AHRA is applicable to Defendants' in-vehicle devices as they are described in Plaintiff's complaints.  In that phase of the case, the parties' primary disagreement centered on whether, under the AHRA, a DACR must itself be a DMR, "because if [a] device must be capable of producing a DACR that *also* qualifies as a DMR in order to count as DARD under the statute," and if the Defendants' devices do not make DMRs as described in the complaint, then the devices as Plaintiff described them were not DARDs as a matter of law.  *Id.* at 17.  Unpacking each layer of the AHRA's nested definitions, the Court determined that the AHRA requires a DACR to itself be a DMR, and therefore, in order for Defendants' devices to be DARDs, they must be "capable of creating DACRs that satisfy the statutory conditions of DMRs." *Id.* at 22.  Based on this analysis, the Court recognized that if Defendants' hard drives are "chock full of non-music data and computer programs," as Defendants maintain, then the output of their recording process is not, by definition, a DMR.  *Id.* Nevertheless, the Court declined to dismiss the case, because it found that it was plausible on the face of the complaint that the output of Defendants' particular recording devices fulfilled the DMR requirements (and thereby their devices qualified

as DARDs)—i.e., the Court concluded that "the exact nature of these devices . . . is a question of fact that must await resolution" after discovery.  *Id.* at 23.

Subsequently, AARC filed motions for reconsideration and clarification, and this Court issued a second opinion resolving those motions.  *See AARC II*, 2016 WL 9963947.  The Court denied the motion for reconsideration, explaining that AARC's argument that the Court misunderstood aspects of the legislative history in its prior opinion was misplaced.  *Id.* at *2–4.  However, the Court granted the motion for clarification, insofar as AARC had asked the Court to clarify the previous opinion's position on whether "a distinct hard drive *partition* or logical disk on which are fixed, in a digital recording format, only sounds, and material, statements, or instructions incidental to those fixed sounds" could constitute a DMR.  *Id.* at *4 (emphasis in original) (internal quotation marks and citation omitted).  Because the prior opinion did not address the issue of hard drive partitions, the Court explained that the prior opinion "does not *preclude* the possibility that a hard drive partition could constitute a DACR under the statute," and found that this fact-specific issue would be best resolved following discovery in the context of the Court's consideration of Defendants' specific devices.  *Id.* at *5 (emphasis in original).

B.   **Current Proceedings**

The sets of cross-motions currently before the Court come at the close of Phase 1 discovery in this case—a period of limited discovery that the Court scheduled in order to facilitate its determination of whether Defendants' devices are capable of making a

DACR for private use.  (*See* Revised Scheduling Order, ECF No. 102, at 1.)[2]  Phase 1A

of the discovery process separately addresses flash drive devices, which are not

included in the instant summary judgment arguments.  (*See* Scheduling Order, ECF No.

101, at 2.)

Accordingly, this Memorandum Opinion addresses solely the four motions for

summary judgment regarding the devices that the parties examined in Phase 1

discovery.  The six Defendants have filed a joint motion for summary judgment (*see*

Mem. in Supp. of Defs.' Joint Mot. for Summ. J. ("Defs.' Mot."), ECF No. 111-1), and

AARC has filed partial motions for summary judgment against each automaker-supplier

pair of Defendants (*see* Pl.'s Mem. in Supp. of Mot. for Partial Summ. J. as to GM and

Denso ("Pl.'s Mot. for GM & Denso"), ECF No. 115-1; Pl.'s Mem. in Supp. of Mot. for

Partial Summ. J. as to Ford and Clarion ("Pl.'s Mot. for Ford & Clarion"), ECF No.

116-1; Pl.'s Mem. in Supp. of Mot. for Partial Summ. J. as to FCA and Mitsubishi

("Pl.'s Mot. for FCA & Mitsubishi"), ECF No. 117, at 8–58).[3]

---

[2] Page numbers herein refer to those that the Court's electronic case-filing system automatically assigns.

[3] In total, this opinion addresses four motions briefed over the course of 13 filings.  Although AARC filed separate motions for partial summary judgment against each pair of Defendants, identical sections appear in all three partial motions for summary judgment.  (*See* Pl.'s Mot. for GM & Denso at 7 n.1.) The only analysis that differs meaningfully across these motions is regarding whether the Defendant devices' partitions contain data that is not incidental to the music they contain, which involves fact-specific arguments about each device that this opinion does not reach.  (*See infra* Part III.B.)

Notably, each of the automaker-supplier pairs briefed their responses to AARC's motions for summary judgment jointly, except Denso and GM, which filed separate oppositions to AARC's partial motion for summary judgment.  Denso explained that the separate filing was necessary because the claims against GM also involve systems supplied by Alpine Electronics of America, Inc., which is not a party to this litigation, and Denso sought to avoid "shar[ing] its [own] confidential technical information with [Alpine,] a nonparty to the lawsuit."  (Denso's Mem. in Opp'n to Pl.'s Mot. for Partial Summ. J. ("Denso Opp'n"), ECF 124-2, at 8 n.1.)  GM's brief thus addresses the claims with respect to GM's Alpine products, and GM otherwise joins in Denso's opposition.  (*See* GM's Mem. in Opp'n to Pl.'s Mot. for Partial Summ. J. ("GM Opp'n"), ECF No. 127, at 7.)

In support of their motions for summary judgment, the parties have also filed statements of undisputed fact, as well as responses and replies to them, which alone total approximately 500 pages.  Much of the parties' lengthy exchanges pertaining to their respective statements of fact is not ultimately material to the Court's analysis; unless otherwise noted, the facts recited in this opinion are undisputed by the parties.

## II.    LEGAL STANDARDS FOR CROSS-MOTIONS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 provides that a court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The mere existence of a factual dispute is insufficient to preclude summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A dispute about a material fact is only "genuine" if the evidence is such that a reasonable jury could return a verdict for a nonmoving party, and a fact is "material" if it might affect the outcome of the suit under the governing law.  *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008).

"The mere fact that the parties to an action made cross-motions for summary judgment does not in itself establish that there is no genuine issue of material fact unless . . . the motions are based on the same material facts and address the same legal issues."  *Fay v. Perles*, 59 F. Supp. 3d 128, 132 (D.D.C. 2014) (internal quotation marks and citation omitted).  In assessing motions for summary judgment, a court must review all evidence in the light most favorable to the nonmoving party, and draw all justifiable inferences in the nonmoving party's favor.  *See Liberty Lobby, Inc.*, 477 U.S. at 255.

### III.   ANALYSIS

The parties' cross-motions for summary judgment are "based on the same

material facts and address the same legal issues[,]" *Fay*, 59 F. Supp. 3d at 132; thus, the

relevant disagreements appear to center on issues of law.  In their joint motion,

Defendants argue that they are entitled to summary judgment on the grounds that their

in-vehicle devices are not subject to the AHRA because they are not DARDs.  (*See*

Defs.' Mot. at 5.)  In this regard, Defendants contend that discovery has shown that

their hard drives are "capable of storing fixed sounds only on hard disk drives that

contain materials that are not incidental to those fixed sounds, such as computer

programs, other data, or images[,]" such that the hard drives fall outside of the statutory

definition of a DMR.  (*Id.*)  AARC does not appear to disagree with this

characterization, but has forged on to contend that it is entitled to summary judgment

based on a novel legal theory regarding hard drive "partitions"; specifically, AARC

asserts that all of the hard drives in question contain defined storage areas that qualify

as DMRs under the statute because that particular area contains only fixed sounds and

data and materials incidental to those sounds.  (*See* Pl.'s Mot. for GM & Denso; Pl.'s

Mot. for Ford & Clarion; Pl.'s Mot. for FCA & Mitsubishi.)

Due in large part to AARC's hard drive partition theory, the parties have plunged

into a theoretical debate about the existence of hard drive partitions, but the Court

considers that disagreement largely irrelevant to the primary issue in dispute, as

explained below.  Ultimately, based on the evidence presented, this Court finds that the

hard drives in Defendants' devices contain all sorts of programs and other materials,

such that they do not qualify as DMRs/DACRs, and as a result, the devices themselves

are not DARDs subject to the AHRA.  And despite all the bells and whistles that

AARC's motions and exhibits contain, AARC has failed to establish that the AHRA's statutory definitions require consideration of a smaller unit of output than the hard drive as a whole, so that partitions—even assuming that they exist as an object distinguishable from the hard drive on which they sit—ought to be considered DMRs for the purpose of the AHRA.  Accordingly, Defendants are entitled to judgment as a matter of law.

### A.     Defendants' Hard Drives Do Not Qualify As DMRs Under The AHRA, As Is Necessary To Make Defendants' In-Vehicle Devices DARDs

The remaining question at this stage of the litigation is whether Defendants' devices are capable of making DACRs that fulfill the statutory conditions of DMRs. The AHRA's definition of a DMR contains multiple parts, as explained in Part I.A, *supra*, but the parties' contentions center on the part of the definition that states that a DMR "is a material object . . . in which are fixed, in digital recording format, only sounds, and material, statements, or instructions incidental to those fixed sounds[.]"  17 U.S.C. § 1001(5)(A)(i).

#### 1.  Hard Drives Are Material Objects

As a threshold matter, there is no dispute that a hard drive is a "material object" as contemplated in the definition of a DMR under the AHRA.  Both this Court's prior opinion and the Ninth Circuit's opinion in *Recording Indus. Ass'n of Am. v. Diamond Multimedia Sys., Inc.*, 180 F.3d 1072 (9th Cir. 1999), treats a hard drive as a material object that is capable of being a DMR, and the Court sees no reason to change that approach, especially given the plain meaning of the term "material object," *see, e.g.*, Black's Law Dictionary (10th ed. 2014) (defining "material" to be "[o]f, relating to, or involving matter; physical" and defining "object" to be "a person or thing").

11

In *Diamond*, the Ninth Circuit discussed the DMR definition as it considered whether or not a portable MP3 player qualified as a DARD.  *See Diamond*, 180 F.3d at 1073.  In that case, the Ninth Circuit upheld the denial of a preliminary injunction that would have stopped the manufacture and distribution of one of the first consumer MP3 players based on its manufacturer's failure to comply with the AHRA.  *See id.* at 1074– 75.  In reaching its conclusion, the *Diamond* court examined the input of an MP3 player, and reasoned that because the hard drive from which the MP3 player got its music was not a DMR, the MP3 player "appear[ed] not to make copies from [DMRs]" as required by the statutory definition of a DARD.  *See id.* at 1076.  In its analysis, the Ninth Circuit specifically noted that "[t]he typical computer hard drive from which [the MP3 player] directly records is, of course, a material object."  *Id.*  And while the *Diamond* court proceeded to conclude that a computer hard drive ordinarily does not satisfy the DMR definition because "almost all hard drives contain numerous programs (e.g., for word processing, scheduling appointments, etc.) and databases that are not incidental to any sound files that may be stored on the hard drive[,]" it appeared to find unremarkable the notion that a hard drive itself is a material object that can constitute the input of the digital recording process when music is copied from it, and thus could be the object that is analyzed for conformity with the DMR definition.  *See id.*  In other words, as contemplated in *Diamond* and accepted in *AARC I*, the hard drives in Defendants' multimedia in-vehicle devices are appropriate "material objects" for the purpose of the DMR analysis.  *See AARC I*, 162 F. Supp. 3d at 13.

Notably, AARC has not pointed to any other authority squarely addressing what constitutes a "material object" under 17 U.S.C. § 1001(5) of the AHRA, nor do they

appear to dispute that a hard drive is a material object.  (*See* Defs.' Reply to Pl.'s Resp. to Defs.' Statement of Undisputed Facts ("Defs.' Stmt. of Undisputed Facts"), ECF No. 137-3, ¶ 28 (reflecting the parties' agreement that "[a] hard disk drive is a material object"); *see also* Pl.'s Mot. for GM & Denso at 27 (noting that "[b]oth AARC's and Defendants' experts agree that a hard disk drive satisfies th[e] requirement" of a material object on which a sound recording can be fixed); Pl.'s Mot. for Ford & Clarion at 26 (same); Pl.'s Mot. for FCA & Mitsubishi at 33 (same).)  The plain meaning of that term, too, supports the conclusion that a hard drive patently qualifies.  As AARC recognizes, the term "material object" is not specifically defined in the AHRA or elsewhere in the Copyright Act (*see* Pl.'s Opp'n to Defs.' Joint Mot. for Summ. J. ("Pl.'s Opp'n"), ECF No. 125-2, at 16), and therefore, Congress must have intended for its plain meaning to apply, *see Perrin v. United States,* 444 U.S. 37, 42 (1979) ("[U]nless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.").  And the plain meaning of the term "material object" indicates simply that a DMR should be a physical, tangible thing.  (*See* Pl.'s Opp'n at 7 ("[A]ll parties agree on the basic, plain meaning definition of 'material object' for purposes of this motion: 'a tangible, physical item made of matter.'"); *see also* Defs.' Mot. at 18 (citing to dictionary definitions to show that "material object" commonly refers to "a physical, tangible item").)  Thus, based on existing case law and the plain meaning of the term "material object," it is evident that a hard drive—such as the ones that Defendants' multimedia devices indisputably contain—qualifies as a material object for the purpose of the AHRA.

2.  <u>Defendants' Hard Drives Contain Materials That Are Not Incidental
    To The Music</u>

Given that a hard drive is a material object, the next task is for the Court to

evaluate Defendants' contention that they are entitled to summary judgment, because

the hard drives in their devices nevertheless fail to satisfy the AHRA's test for

determining whether such an object qualifies as a DMR.  As discussed in Part I.A,

*supra*, the AHRA has a multi-part definition for a DMR that explains both what

constitutes a DMR and what does *not* qualify as a DMR for AHRA purposes.  *See* 17

U.S.C. § 1001(5).  Most relevant for the present inquiry is the provision that states that

a DMR is a material object "in which are fixed, in a digital recording format, only

sounds, and material, statements, or instructions incidental to those fixed sounds[,]" *id.*

§ 1001(5)(A)(i), and also the provision that clarifies that a material object *cannot* be a

DMR if it contains "one or more computer programs" other than programs or

instructions that constitute or bring about the fixed sounds and/or materials incidental

to the sounds, *id.* § 1001(5)(B)(ii).

Based on the evidence and information gathered during the discovery period in

this case, it is clear that the hard drives in Defendants' multimedia devices are, indeed,

"full of non-music data and computer programs," as Defendants previously maintained.

*AARC I*, 162 F. Supp. 3d at 22.  Indeed, each of the hard drives in Defendants' devices

"includes computer programs, data, or other material" that are *not* incidental to the

fixed sounds, and though the exact contents vary based on device, the in-vehicle

systems include such things as navigation software, DVD players, displays of album art

and information, and AM/FM and satellite radio functions.  (Defs.' Stmt. of Undisputed

Facts ¶ 1.)

For example, the Denso Infotainment System that is installed in certain GM vehicles contains a navigation system, AM/FM radio, satellite radio, a CD/DVD player, and an MP3 player.  (*See* Defs.' Stmt. of Undisputed Facts at ¶ 1(a); *see also* Decl. of Akihiro Ogasawara, Ex. 4 to Defs.' Mot. ("Ogasawara Decl."), ECF No. 119, at ¶¶ 7–8.)  Significantly for present purposes, the nerve center of these operations and others is a hard disk drive that contains the "computer programs necessary to operate (i) the various navigation functionalities such as map drawing, route guidance, location information, vehicle information, route search, point of interest search, traffic information display and voice recognition, and (ii) other vehicle control functions such as the rear view camera" (Ogasawara Decl. ¶ 18), and also "the computer programs necessary to operate audio and amusement functionalities," including "AM/FM radio and satellite radio, the Gracenote[] music recognition database, CD/DVD player, USB audio playback, voice recognition, audio control, and CD/DVD recording functionality" (*id.* ¶ 19; *see also* Infotainment System Specification Rev. 1.0, Exhibit 4A to Defs.' Mot., ECF No. 119 at 60 (noting in the specifications manual that the data to be stored in the hard disk drive include map data, audio data, metadata, radio data, and XM radio data); *id.* at 41–73 (describing the specifications for various functionalities, including AM/FM radio, DVD player, and navigation support).)

The Clarion devices supplied to Ford are substantially similar.  Each of the hard drives contains software and data, including "software for displaying vehicle climate information; software for playing satellite radio, AM/FM radio, and sound files from DVDs, audio CDs and data CDs; software for displaying video from the rear view camera; software for uploading photographs[,]" and also data for maps, the Gracenote

database, voice command functions, and logos and graphics.  (Defs.' Stmt. of Undisputed Facts at ¶ 1(d); *see also* Decl. of Kenneth M. Hipp, Ex. 9 to Defs.' Mot. ("Hipp Decl."), ECF No. 120-1, at ¶ 12 ("Each Clarion System hard drive contains on its platter the software application necessary for operation of the Clarion System."); *id.* at ¶ 14 (describing the data stored on the Clarion device hard drives, including the Gracenote database and navigation map data).)

Notably, to the extent that the hard drives in Defendants' devices contain computer programs unrelated to any musical functions (*see, e.g.*, Ogasawara Decl. ¶¶ 18–20; Hipp Decl. ¶ 12), they squarely implicate Congress's determination of what *cannot* constitute a DMR, 17 U.S.C. § 1001(5)(B).  Thus, the hard drives onto which the in-vehicle multimedia devices copy music files manifestly do not qualify as DMRs as the AHRA defines them, which necessarily means that none of the Defendants' devices are DARDs that produce the type of outputs the AHRA contemplates.  *Cf. Diamond*, 180 F.3d at 1077 (finding that Congress did not intend for DMRs to include computer hard drives, and instead was focused on objects such as "recorded compact discs, digital audio tapes, audio cassettes, long-playing albums, digital compact cassettes, and mini-discs" (quoting S. Rep. No. 102-294 at *n.36 (1992))); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1024 (9th Cir. 2001) (finding that the AHRA "does not cover the downloading of MP3 files to computer hard drives").

AARC fully admits that there are non-music-related materials on all of the hard drives of Defendants' devices, as the evidence demonstrates, and indeed, AARC even concedes that this undisputed fact leads inexorably to the conclusion that Defendants' devices are not DARDs—*if* the hard drive itself is the material object that is the subject

of the DMR analysis.  (*See* Tr. of Mot. Hr'g, ECF No. 149, at 9:2–13.)  It is for this reason that AARC struggles mightily to convince the Court that a particular *subdivision* of the hard drive (known as a hard drive "partition") is the relevant unit of measurement for the AHRA's DMR definition.  (*See* Pl.'s Opp'n at 8–40.)  Because this Court disagrees with AARC's contention that the statutory DMR analysis must be undertaken with respect to a hard drive partition (or, for that matter, any other subdivision of the hard drive onto which the music files are copied) (*see infra* Part III.B), and because it finds that the relevant material object in Defendants' devices (the hard drives themselves) contains more than just fixed sounds, it confidently concludes that the answer to the question of whether Defendants' in-vehicle devices are DARDs under the AHRA is a resounding "no."

### B.  AARC Has Not Established That Hard Drive Partitions Are DMRs For The Purpose Of The AHRA

As mentioned, AARC concedes that its claims sink under the analysis of Defendants' devices laid out above, but it nevertheless grasps for a new theory that it contends serves as a lifeline to save its case: the hard drive "partition" theory. Beginning with its motion for clarification, *see AARC II*, 2016 WL 9963947 at *4, AARC has trained its focus on *segments* of the hard drives that are in Defendants' multimedia devices, and now cleverly floats two species of additional arguments.  First, AARC suggests that whether or not a hard drive partition is a "material object" for AHRA purposes is a disputed question of fact that is inappropriate for resolution on summary judgment (*see* Pl.'s Opp'n at 7–14), and second, AARC maintains that the partitions within the hard drives of Defendants' devices are tangible, physical entities that can and should be the relevant "material object" for the purpose of determining

whether Defendants' devices produce a DMR (*see* Pl.'s Mot. for GM & Denso at 20–31; Pl.'s Mot. for Ford & Clarion at 19–30; Pl.'s Mot. for FCA & Mitsubishi at 26–38).

AARC's argument is unpersuasive on both fronts, as explained below.  This Court has little doubt that the issue of what Congress meant when it defined DARDs as machines that produce DMRs, and further defined DMRs as "material objects" that contain only fixed sounds, is a question that this Court can decide as a matter of law. And although the parties vigorously debate the fundamental nature of a hard drive partition, this Court finds that, even if hard drive petitions are tangible, physical items, AARC has not established that a hard drive partition has a *distinct* physical identity such that it can be considered a "material object" *apart from* the hard drive on which it exists.  Thus, AARC cannot meaningfully maintain that a partition, as opposed to the hard drive itself, is *the* material object that should be evaluated for its conformity with the statutory definition of a DMR.  Moreover, even if one assumes, *arguendo*, that a hard drive partition is a material object with a discernable physical existence apart from the hard drive on which it sits, AARC has not shown that the AHRA requires any inquiry into segments of the material object that is purportedly a DMR when a court evaluates the output of an alleged DARD.  In fact, to follow this limb to its outer reaches would cause the entire logic of the AHRA's DMR definition to collapse in a manner that contravenes the purpose of the statutory scheme.

    1.  <u>The Meaning Of "Material Object" And Whether Hard Drive Partitions Can Be Characterized As Such Is At Best A Mixed Question Of Law And Fact, But In Any Event, It Is Not The Pertinent Issue In This Case</u>

AARC's first attempt to thwart Defendants' request for summary judgment is the suggestion in its opposition brief that there are genuine disputes of material fact regarding what qualifies as a "material object" under the AHRA.  (*See* Pl.'s Opp'n at 14

("[T]here is more than enough evidence to require denial of [Defendants'] motion for summary judgment on the basis of the plain meaning of 'material object[.]'"); *see also id.* at 8 (maintaining that the critical "question is whether the hard disk drive partitions at issue are, *in fact*, tangible and physical, or whether they are, as Defendants suggest, merely 'logical constructs'" (emphasis in original)); *id.* (arguing that "Defendants would be entitled to summary judgment only if they could show that no reasonable jury could conclude that the partitions in question are 'tangible items made of matter'").) AARC's point, as this Court understands it, is that because the AHRA defines a DMR as a "material object," this Court must evaluate whether that statutory definition pertains to tangible objects that are "part[s] or segments" of material objects (like hard drive partitions) as a threshold matter of law (*id.* at 7), and if it does, then the parties' dispute over whether the hard drive partitions in Defendants' devices are tangible, physical objects as a matter of fact must be decided by a jury (*see id.* at 7–8 (submitting that the Court must decide whether "a part or segment of a larger tangible, physical item can be a 'material object' for purposes of the statute," and then submit the matter to a jury, because "if a reasonable jury could conclude that the hard drive partitions in question are material objects, then Defendants' motion for summary judgment must be denied").)  Thus, AARC structures its argument to suggest that the parties' pitched battle over whether or not the hard drive partitions in Defendants' devices are "material objects" presents "a question for the jury" that precludes summary judgment in Defendants' favor.  (*Id.* at 9.)

This contention is as misleading as it is misguided.  The meaning of the term "material object" as it appears in the AHRA's DMR definition—including its scope—is

an issue of statutory interpretation, and it is clear beyond cavil that where "statutory terms are at issue, their interpretation is a question of law[.]"  *Chandris, Inc. v. Latsis*, 515 U.S. 347, 369 (1995) (citation omitted); *see United States v. Cook*, 594 F.3d 883, 886 (D.C. Cir. 2010) ("[T]he proper interpretation of a statute is a question of law."). Moreover, when the issue of whether or not the partitions in any of the hard drives in Defendants' devices exist as tangible, physical objects is set aside, and even assuming *arguendo* that they do, there is a threshold legal issue of whether the entire DMR definition (including its "material object" criterion) *encompasses* such things as hard drive partitions, such that hard drive partitions can qualify as DMRs as a matter of law. *See, e.g.*, *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 572 (2012) (deciding as a matter of law that a written translator was not an "interpreter" within the meaning of a compensation statute); *ASARCO Inc. v. EPA*, 578 F.2d 319, 325 (D.C. Cir. 1978) (deciding as a matter of law that a plant consisting of a combination of facilities is not a "source" within the meaning of the Clean Air Act).  (*Cf.* AARC's Mot. for Clarification or, in the Alternative, Certification for Interlocutory Appeal, ECF No. 82, at 2 (asking this Court to decide as a matter of law that partitions can constitute DMRs under the AHRA).)  Put another way, in order to resolve Defendants' motion for summary judgment, this Court must ask (1) what Congress intended when it defined a DMR as a material object that has only fixed sounds and does not include computer programs, and (2) whether that DMR definition can extend to the alleged objects known as hard drive partitions as Plaintiff claims, and the Court must address these questions *before* any factfinder undertakes to evaluate the particular partitions in the hard drives of the multimedia devices at issue here.  Therefore, AARC is mistaken to suggest that the

parties' spirited dispute over whether hard drive partitions are tangible objects as a matter of fact renders summary judgment inappropriate.

It is also important to understand how AARC's partition theory distorts the legal issue that Defendants' request for summary judgment presents, which is at best a mixed question of law and fact.  In this regard, the Court posits the following helpful analogy. Suppose Congress enacted a statute that requires the manufacturers of "motor vehicles" to undertake certain duties, such as the payment of royalties, and specifically defines "motor vehicles" as "a conveyance that contains a motorized engine but is not propelled by wind."  If a court was asked to resolve a dispute concerning the applicability of this statute to a modern sailboat—a conveyance that is unquestionably propelled by wind if the entire sailboat is considered, but has on board various components that are driven by small engines (e.g., a motorized anchor line for mooring the boat)—a clever plaintiff might argue that the threshold question of law for the court is merely whether or not the statute applies to a part or segment of the vehicle in question, and that the defendant is not entitled to summary judgment unless no reasonable jury could find that the anchor line is a "conveyance" as a matter of fact, which the plaintiff would cast as a hotly-disputed issue between the parties.  (In the context of *that* dispute, the plaintiff would contend that the anchor line clearly qualifies as a "conveyance" within the meaning of the statute because it transports the anchor on and off the boat, and that the anchor line on the boat in question contains a motorized engine that is not propelled by wind, so the boat's manufacturer should be ordered to comply with the statute's requirements, while, having been lured into this debate, the defendant would offer evidence and argument in the hopes of persuading the court that the anchor line is not a "conveyance" within the

meaning of the statute.)  Of course, the *actual* threshold question that the court would have to decide as a matter of law in order to determine whether the defendant is entitled to summary judgment is whether Congress intended for its definition of "motor vehicles" to encompass sailboats at all.

Thus, in this Court's view, the parties' raging disagreement over the tangible existence of hard drive partitions (i.e., are they or are they not "material objects") is largely beside the point, because that is not the question to be answered when deciding whether Defendants' devices can qualify as DARDs under the AHRA.  *See Liberty Lobby, Inc.*, 477 U.S. at 247–48 ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."); *see also id.* at 248 (explaining that a fact dispute is not material if it does not "affect the outcome of the suit under the governing law").  Indeed, as applied in Part III.A, *supra*, and further explained in Part III.B.3, *infra*, this Court's legal analysis with respect to Defendants' multimedia devices rests on its conclusion that an *entire* hard drive, as opposed to some allegedly segregable portion of it (however tangible), is the relevant unit of measurement with respect to the AHRA's DMR definition, just like the entire sailboat is the thing to be evaluated for conformity with the hypothetical "motor vehicle" provision.  Consequently, for the purpose of evaluating Defendants' argument that they are entitled to summary judgment as a matter of law because the hard drives in their multimedia devices are not DMRs, "it is [a] sufficient [factual basis] that each of Defendants' Systems fixes sounds in a hard disk drive that also contains computer programs and/or other material that is not incidental to the fixed

sounds on the hard disk drive" (Defs.' Mot. at 8)—a fact that AARC does not dispute (*see* Defs.' Stmt. of Undisputed Facts ¶ 1; *see also* Tr. of Mot. Hr'g at 9:2–10).

2.   <u>AARC Has Not Established That Partitions Are Objects Distinct From The Hard Drives On Which They Exist</u>

In order for AARC to advance its argument that the hard drive partitions in Defendants' devices can be considered the relevant "material object" for the purpose of the DMR definition even though Defendants' hard drives as a whole do not satisfy the AHRA, it must first show that a partition is a material object that is distinct from the hard drive on which it sits—i.e., that a partition is a material object *in and of itself*. The Court finds it odd that the parties have spilled much ink debating the issue of whether a hard drive partition is a physical object, on the one hand, or simply a logical construct, on the other, without evaluating that factual determination *in context*, by considering whether, even if a partition is a tangible, physical object, that object has any meaningful existence *apart from the hard drive*, such that it could possibly be considered the relevant unit of measurement for the Court's assessment of whether Defendants' devices produce DACRs that qualify as DMRs.  When that lens is applied, as this Court thinks it must be, the inevitable conclusion is that, however tangible a hard drive partition might be, it has no physical identity separate and distinct from the hard drive, and as a result, AARC has failed to establish that the DMR definition can pertain to *that* object without regard to the hard drive on which the partition sits.

To understand the relationship between a partition and the hard drive, it is helpful to begin with some basic technical concepts.  Defendants' in-vehicle multimedia devices contain hard drives, each of which has a single platter that is made of metal or glass and coated with magnetically sensitive material that stores information based on

the polarity of particular spots on the coating.  (*See* Defs.' Stmt. of Undisputed Facts ¶ 6.)  When a hard drive is partitioned, "one [] physical [] disk is, through the use of software, divided into multiple smaller logical hard disks."  *Veritas Operating Corp. v. Microsoft Corp.*, No. 2:06-CV-00703-JCC, 2007 WL 6872747, at *21 (W.D. Wash. May 29, 2007), *report and recommendation adopted as modified*, No. C06-0703C, 2007 WL 6872748 (W.D. Wash. Sept. 12, 2007).  Thus, a partition is a "defined storage space on a hard disk[,]" *id.*, that "divide[s] the physical capacity of a single hard drive logically into separate areas[,]" Deborah Morley & Charles S. Parker, Understanding Computers 104 (16th ed. 2016).  These partitions "function as independent hard drives . . . but they are still physically one hard drive."  *Id.*; *see also Veritas Operating Corp.*, 2007 WL 6872747, at *21 (noting that separate partitions are often created to run different operation systems on the same hard drive without interference from each other).  "[R]elevant information about each partition, including the range of logical block addresses associated with the partition[,]" is stored in a partition table.  (Defs.' Stmt. of Undisputed Facts ¶ 18.)  Furthermore, a partition does not have to be all in one place, or even on one hard drive; it "can encompass part or all of a platter, multiple platters in the same disk drive, or platters in multiple disk drives."  (*Id.* ¶ 16.)

The parties hotly contest the issue of whether or not a hard drive partition is a material object, such that it falls within the plain meaning of the AHRA's DMR definition.  (*See, e.g.*, Pl.'s Mot. for GM & Denso at 11–15; Pl.'s Mot. for Ford & Clarion at 11–15; Pl.'s Mot. for FCA & Mitsubishi at 18–22; FCA and Mitsubishi Opp'n to Pl.'s Mot. for Summ. J. ("FCA & Mitsubishi Opp'n"), ECF No. 128, at 10–17; *see also* Defs.' Mot. at 17–23.)  Defendants maintain that a partition is data, or a logical

construct, or merely a way of organizing the information on a hard drive, and is *not* a physical object.  (*See* Denso Opp'n at 10 ("[A] partition on a hard disk drive is itself made up of data, nothing more."); GM Opp'n at 34 ("[A] 'partition' is instead, a logical construct, *i.e.* a grouping of data defined by an intangible list of memory addresses[.]"); Clarion and Ford Opp'n to Pl.'s Mot. for Partial Summ. J. ("Clarion & Ford Opp'n"), ECF No. 126, at 8 ("[A] partition is not an object at all."); FCA & Mitsubishi Opp'n at 17 ("[A] partition is not a physical object . . . . [It] is a logical method for organizing data located on the physical platter of a hard disk drive.").)  For its part, AARC insists that a partition *is* a physical object, because it is a portion or segment of the hard drive, which is indisputably tangible.  (*See* Pl.'s Mot. for GM & Denso at 12 ("A partition has the same relevant characteristics as a hard drive, from both a physical and functional perspective."); Pl.'s Mot. for Ford & Clarion at 12 (same); Pl.'s Mot. for FCA & Mitsubishi at 19 (same).)

In a sense, both parties can be right about their characterizations—a partition can be thought of as *both* a physical part of a hard drive (as AARC argues) *and* as a logical construct (as Defendants contend).  (*See* Pl.'s Opp'n at 28 (noting that the idea that something is "a logical organization of data" does not mean that the thing is not "simultaneously indisputably [a] material object" (internal quotation marks omitted)).)  To understand why this is so, imagine that two college roommates share one room, and because they very much want to respect each other's space, they agree, between the two of them, that this half of the room is A's room and the other half is B's room.  They draw a map of the room, clearly noting the demarcations, and store the map in the drawer of the single desk in the room.  No physical change is made to the room as a

result of the roommates' agreement, but A and B both know where the boundaries of their own half-rooms are, and they each keep to their own side of the room, which, as a result, essentially functions as two separate rooms.  Under this scenario, Defendants' position is that each half-room is not a material thing; it exists solely within the roommates' minds, as information marked out on their map in the desk drawer.  Thus, to Defendants, the division of the rooms is purely conceptual, for the room was, is, and continues to be, one space.  By contrast, AARC's position would be that one-half of the room is still a room, and thus it is undoubtedly a material thing; it would be silly, AARC might say, to think that a room suddenly becomes *in*tangible just because it is divided into half.  (*See, e.g.*, Tr. of Mot. Hr'g at 11:11–12 ("A slice of pizza is part of a larger pizza; it's still a thing.").)

Accordingly, neither party's conceptualization is wrong, per se.  But the roommate analogy highlights an important flaw in the focus of the parties' debate: one reason that the Defendants' hard drive partitions cannot be DMRs under the AHRA is that even if we credit AARC's view that a partition is a tangible object, it is *the same tangible object* that the hard drive is—i.e., it has no physical form that is distinct from that of the hard drive, and, as explained above, the hard drives in Defendants' devices contain computer programs, non-music data, and other materials not incidental to the music.  In other words, the roommates have merely *defined* part of the one room; there is no physical line that actually separates the roommates' halves, nor is there a physical separation between a hard drive partition and the hard drive on which it sits.  Thus, with respect to an evaluation of the area at issue, a partition is not *materially distinguishable* from the hard drive itself.

Think of it this way: if the goal is to determine whether or not the roommates' space contains a desk, a bystander would assess the area and reasonably and logically conclude that the room has a desk; in doing so, she would consider the entire room, and conclude that the answer is yes.  What she would *not* do (without further instruction or explanation) is consider only B's half-room and reach the conclusion that B's half-room is not a space that contains a desk.  So it is here.  AARC has not pointed to any physical barrier or other aspect of a hard drive partition that actually distinguishes it from the hard drive; therefore, in theory and in practice, to identify a hard drive partition as a "material object" for the purpose of the DMR definition is the same thing as pointing to the hard drive on which the partition exists.  That is, without a distinct physical identity that is separate and apart from the hard drive, a partition is not really a different "object" in any meaningful sense (i.e., an object *by itself*), regardless of whether it can properly be characterized as physical or tangible.

Any suggestion by AARC that it is wrong to require a discernible distinction between a hard drive partition and the hard drive itself because a "'material object'" need not be "separate from or unconnected to other 'material objects'" (Pl.'s Opp'n at 14; *see also* Pl.'s Mot. for GM & Denso at 28; Pl.'s Mot. for Ford & Clarion at 27; Pl.'s Mot. for FCA & Mitsubishi at 34) misunderstands the difference between requiring a *distinct* part of a material object and a *separate* one.  This Court agrees with AARC that a DMR need not function as a separate, stand-alone object, independent of the DARD that creates it, *AARC I*, 162 F. Supp. 3d at 21, and to this extent, AARC is right to observe that "[t]his Court has already rejected Defendants' argument that a 'material object' under AHRA must be physically separate" from the DARD (Pl.'s Opp'n at 15).

But the fact that an alleged DMR can be part of a larger tangible object does not mean that it need not have its own physical identity; indeed, without that, one cannot determine where the larger tangible item begins and ends relative to the purported part, nor can it be established that the smaller item in question warrants characterization as an object (rather than merely a defined area of the larger item itself), let alone a "material object" that satisfies the DMR definition in a way that the larger tangible item does not.[4]

The bottom line is this: for AARC's hard drive partition theory to work, the question is not simply whether a partition is a tangible, physical part of the hard drive, but whether it is a tangible, physical part of the hard drive *that is distinct from the hard drive itself*, such that it can be the relevant unit of measurement for the purpose of the DMR definition, and this is especially so because it is undisputed that the hard drive does not satisfy the statutory test.  For all its talk of physicality and tangibleness, AARC has not demonstrated that a hard drive partition is a *distinct* physical object, separate and apart from the hard drive on which it sits; therefore, its partition theory fails.

> 3.  <u>AARC Has Not Established That The DMR Definition Requires An Inquiry Into Smaller Units Of "Material Object"</u>

AARC's partition theory falters further, because even if one assumes that a hard drive partition is a material object with a distinct physical identity, AARC has not provided a persuasive reason to conclude that the AHRA requires an inquiry into any

---

[4] Extending the sailboat analogy (and shamelessly mixing metaphors), AARC's reliance on a hard drive partition is like the plaintiff in the sailboat case pointing to an area of the boat's hull, and arguing that that area alone is a "conveyance" within the meaning of the statute.  It most certainly is, insofar as it is part of the boat.  But there is no justification for any finding that it is a *distinct* part of the boat that should be treated as such and evaluated separately with respect to the statutory criteria, absent some tangible, physical difference between that area and the rest of the vessel.

smaller units once the hard drive has been identified as a material object onto which the device in question copies digital music files.  *See* Part III.A.1, *supra*.  In other words, if it is true that a hard drive is a material object (*see* Pl.'s Mot. for GM & Denso at 27; Pl.'s Mot. for Ford & Clarion at 26; Pl.'s Mot. for FCA & Mitsubishi at 33; *see also* Defs.' Stmt. of Undisputed Facts ¶ 28), then even under AARC's partition theory, there would be more than one material object that a court could look to in order to evaluate whether Defendants' devices are DARDs for the purpose of the DMR definition (the hard drive *or* the hard drive's subdivision known as a partition), and AARC presents no viable reason why the Court ought to look at the smaller subpart instead of the entire hard drive.

In this regard, it is helpful to recall that the AHRA states that a DMR, *inter alia*, "is a material object . . . in which are fixed, in digital recording format, only sounds, and material, statements, or instructions incidental to those fixed sounds[.]"  17 U.S.C. § 1001(5)(A)(i).  And the definition further states that a DMR "does not include a material object . . . in which one or more computer programs are fixed[.]"  *Id.* § 1001(5)(B)(ii).  Thus, the statute requires a court to identify the material object that constitutes the output of the copying process, and then assess what is on that material object to determine whether there are non-music-related materials or computer programs fixed thereon.  The statute therefore necessarily makes relevant the contents of the *entire* material object that has been identified, and AARC's suggestion that the court can select only a part of the object to examine—even to the point of isolating the particular part of the object that contains only music files and applying the DMR definition solely in that context—is dubious in light of the statute's text.  Another way

to express this same concern is to recognize that allowing the examiner to choose whether to consider the material object in whole or in part could itself be determinative of the outcome; i.e., whether or not something qualifies as a DMR may well depend on *which* part of the material object one chooses to examine. *See supra* Part III.B.2 (explaining, in the context of the room hypothetical, that if the bystander considers the *entire* room, she would have to find that the room contains a desk, but if she focuses only on B's half, she could confidently conclude that there is no desk).

This is, of course, exactly why AARC puts forward its partition theory—it admits that, when viewed as a whole, the hard drives in Defendants' devices contain non-music-related materials and thus do not qualify as DMRs (*see* Tr. of Mot. Hr'g at 9:2–10), but it maintains that a subunit of the hard drives (the partition) contains only fixed sounds and materials incidental to it, which, it says, renders the partition a DMR that gives rise to the AHRA's duties. But what AARC fails to do is to explain why the statute demands that the DMR determination be made at the level of the *smaller* unit of the pertinent material object—i.e., why examination of the *subpart* dictates the result of the DMR analysis, rather than the logical default approach of looking at the object as a whole.[5] Indeed, as Defendants point out, when Congress wanted Title 17 to refer to *parts* of things, it said so. (*See* Defs.' Reply in Support of Defs.' Joint Mot. for Summ J. ("Defs.' Reply"), ECF No. 137-2, at 12 (citing to other Title 17 provisions that refer to "portions" of materials).) And given the text and purpose of the AHRA, this Court cannot fathom that Congress intended to make the DARD determination turn on an evaluation of only part of the output of the device's copying process.

---

[5] When searching for a desk, is the bystander somehow required to consider only B's half of the room, and if so, why?

Undaunted, AARC tries to turn this analysis on its head by suggesting that *Defendants* have shown no reason why a "material object" must necessarily be separate from other larger material objects, or capable of being separated, and that they have thus failed to demonstrate that a hard drive partition is precluded from being the relevant material object.  (*See* Pl.'s Opp'n at 14–25.)  But this framing has the reasoning exactly backwards:  it is undisputed that hard drives are material objects, which is all Defendants need in order to be entitled to summary judgment under the circumstances presented here; Defendants need not prove that the term "material object" *precludes* partitions.  Rather, it is *AARC* that must make a persuasive showing as to why the statute requires the Court to look beyond the hard drive as whole and make its DMR determination with reference only to the partition, which AARC simply has not done.

For these same reasons, in the context of its affirmative arguments in favor of summary judgment, AARC's reliance on *London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153 (D. Mass. 2008), as well as other case law interpreting the "material object" term in other contexts, is misplaced.  *London-Sire* involved a copyright infringement claim under 17 U.S.C. § 106, and the district court there touched on the "material object" term in the context of assessing whether the electronic files in question were "phonorecords" as defined in 17 U.S.C. § 101.  *See London-Sire*, 542 F. Supp. 2d at 169 (analyzing the definition of "'phonorecords' as 'material objects in which sounds . . . are fixed'" (quoting 17 U.S.C. § 101)); *see also Capitol Records, LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640, 649 (S.D.N.Y. 2013) (citing *London-Sire* for the same analysis of the meaning of "phonorecord" under 17 U.S.C. § 101 in a copyright

infringement case under 17 U.S.C. § 106).  AARC argues that because the *London-Sire* court found that "any object in which a sound recording can be fixed is a 'material object'" and that the segment of the hard drive containing the electronic file constitutes "phonorecords" within the meaning of the statute, *London-Sire*, 542 F. Supp. 2d at 171, that case demonstrates that "a material object need not be a physically separate—or even separable—from a larger material object" (Pl.'s Mot. for GM & Denso at 23; Pl.'s Mot. for Ford & Clarion at 22; Pl.'s Mot. for FCA & Mitsubishi at 29).  But this interpretation of the term "material object" comes in the context of a different definition in a different part of the Copyright Act, whose relevance to the AHRA and the DMR definition is unclear.  (*See, e.g.*, Denso Opp'n at 31–32 (arguing that Congress intended the AHRA to be a regulatory scheme distinct from the Copyright Act, and that the DMR definition must be interpreted in the context of the AHRA).)  Moreover, even accepting AARC's interpretation of *London-Sire* and its progeny as standing for the proposition that a non-separable part of the hard drive nevertheless qualifies as a material object, this line of argument still says nothing about whether a hard drive partition is the *appropriate* material object for the purpose of establishing that Defendants' devices produce DMRs.

What is more, AARC's silence on this crucial issue appears to be entirely justified, because interpreting the AHRA to require examination of smaller units of a "material object" effectively renders the DMR definition meaningless, and thereby undermines both the language of the statute and the purpose of the statutory scheme. As has been repeatedly observed, the AHRA defines a DMR based on the contents of an object—what must be, and cannot be, included—and it does *not* state simply that so

long as any music is fixed on a material object that object qualifies as a DMR (indeed, that is the definition of "phonorecords" on which AARC relies, and this is a key distinction between how Congress defined "phonorecords" versus DMRs).  If AARC is correct that subunits of a material object need to be examined for conformity with the DMR definition, then there is no limit to what counts so long as there is any music file on the medium, because one can *always* identify a smaller part of the object in a manner that isolates the music and forces the object to fit the DMR definition.  (*See, e.g.*, Defs.' Mot. at 23 (arguing that if one could "subdivide a single digital medium based on the portions that contain particular types of files to the exclusion of others," as the AARC has done here, "then the limiting language of § 1001(5)(A)(i) would have no meaning [because] a 'material object' could never contain both digital sounds and disqualifying non-incidental materials").)

AARC appears to recognize that its partition theory lacks a limiting principle, but it has no good answers.  Indeed, its only response appears to be that this Court need not follow its arguments to their logical conclusion *in this case*, because AARC has argued only that partitions, and not anything smaller than a partition, are material objects.  (*See* Pl.'s Mot. for GM & Denso at 27 (urging that "[t]he Court need not determine how far to extend the reasoning of *London-Sire* in AHRA for AARC to prevail here" because the partitions at issue in this case "are much larger than [music] files"); Pl.'s Mot. for Ford & Clarion at 26 (same); Pl.'s Mot. for FCA & Mitsubishi at 33–34 (same); *see also* Pl.'s Opp'n at 30.)  But, of course, this argument fails to appreciate that it is only by considering the logical conclusions of the statutory interpretation that a party seeks to advance that the Court can decide whether Congress

actually intended for the statute it enacted to be read in the way the party urges.  And AARC's interpretation would lead to the conclusion that an individual song—which, after all, is stored in an identifiable part of the hard drive on which it sits—could qualify as a DMR.  The Ninth Circuit squarely rejected this conclusion, *see Diamond*, 180 F.3d at 1077 ("There are simply no grounds in either the plain language of the definition or in the legislative history for interpreting the term 'digital musical recording' to include songs fixed on computer hard drives."), and this Court will do the same here.

Consequently, this Court declines AARC's invitation to ignore the fact that its legal theory eviscerates any meaningful definition of a DMR and ultimately alters the careful balance that Congress struck with the AHRA's statutory scheme.  Stated simply, if the DMR definition can be made to fit *any* piece of digital music, then the manufacturers of music-copying devices would have to satisfy the statute's requirements for all sorts of machines that are not only beyond the imagination of the AHRA's drafters, but are also expressly excluded by the very terms that those legislators specifically negotiated and ultimately adopted.  Having found no legal support for AARC's partition theory, this Court can end its inquiry here, and it need not go further to assess whether, in fact, each partition in Defendants' devices contains only fixed sounds or materials incidental to any fixed sounds, such that the particular partitions in question would qualify as DMRs.  (*See* Pl.'s Mot. for GM & Denso at 31–44; Pl.'s Mot. for Ford & Clarion at 31–43; Pl.'s Mot. for FCA & Mitsubishi at 38–55.)[6]

---

[6] Similarly, because this opinion concludes as a matter of law that Defendants' devices do not produce outputs that qualify as DMRs regardless of any remaining factual disputes regarding the partition or otherwise, this Court need not reach Defendants' objections regarding AARC's expert, Dr. Loy, to the

## IV.    CONCLUSION

For the reasons explained above and in this Court's prior opinions in this matter, the Court concludes that Defendants have demonstrated that their in-vehicle multimedia devices do not produce DACRs that comport with the DMR definition, and thus are not DARDs under the plain text of the AHRA.   Therefore, as set forth in the accompanying order, Defendants' Joint Motion for Summary Judgment (ECF No. 111) is **GRANTED**, and Plaintiff's Motion for Partial Summary Judgment as to GM and Denso (ECF No. 115), Plaintiff's Motion for Partial Summary Judgment as to Ford and Clarion (ECF No. 116), and Plaintiff's Motion for Partial Summary Judgment as to FCA and Mitsubishi (ECF No. 117) are **DENIED**.

DATE:  March 23, 2018                          *Ketanji Brown Jackson*
                                               KETANJI BROWN JACKSON
                                               United States District Judge

---

extent that Defendants have argued that his declaration and expert reports should be excluded in their reply in support of their statement of facts and in their oppositions to AARC's statement of facts.  (*See* Defs.' Stmt. of Undisputed Facts at 3–9; Denso's Resp. to Pl.'s Stmt. of Material Facts, ECF No. 124-3, at 2–7; GM's Resp. to Pl.'s Stmt. of Material Facts, ECF No. 127-1, at 2–7; Clarion & Ford's Resp. to Pl.'s Stmt. of Material Facts, ECF No. 126-1, at 2–6; FCA & Mitsubishi's Resp. to Pl.'s Stmt. of Material Facts, ECF No. 128-1, at 2.)